BRIDGEPORT TRUST COMPANY, EXECUTOR AND TRUSTEE, *vs.* MARIE W. FOWLER ET ALS.

Third Judicial District, New Haven, January Term, 1925.

WHEELER, C. J., BEACH, CURTIS, KEELER and HAINES, JS.

A direction by the testatrix to pay "all inheritance or other taxes" from the residue of the estate, included city taxes levied during the settlement of the estate upon the list filed previous to her death, and Federal income taxes upon capital gains resulting from sales of securities by the executors.

A mortgage debt, together with interest thereon, is payable as an ante-mortem claim out of personal estate, when that is sufficient.

In estimating the amount necessary to be set aside as a fund for the payment of debts and administration expenses, an executor should include the interest or income which may be earned thereon; and any unused portion of such income reverts to the *corpus* of the estate.

A legatee of the income from a certain sum of money bequeathed

Bridgeport Trust Co. *v.* Fowler.

in trust, is entitled to the income earned by the trust fund since the testator's death; and if the fund has not been separated from the *corpus* of the estate during its settlement, the average rate of income earned by the personal estate as a whole will be treated as the rate earned by the trust fund.

A provision that a certain trust fund should consist of bonds to be chosen by the trustee, entitles the beneficiary to the income earned since the testator's death by the particular bonds selected.

The testatrix mortgaged her real estate for $100,000 to secure her agreement to pay C a life annuity of $4,000 in quarterly instalments. *Held:*

1. That the method of providing for the annuity payments was an administrative question to be decided by the executors.

2. That the executors were not bound to exonerate the real estate from the mortgage by paying $100,000 to C.

3. That if they chose to set aside a fund to meet the quarterly payments, the income should also be used for that purpose, any balance remaining at C's death to become a part of the residue.

4. That, for the purpose of determining inheritance and succession taxes, the annuity obligation should be reckoned as equivalent to the purchase price of an annuity contract.

Argued January 22d—decided April 3d, 1925.

SUIT by the executor and trustee under the will of Susan Washburne Bishop, late of Bridgeport, deceased, for advice and direction in the administration of its trust, brought to and reserved by the Superior Court in Fairfield County (*Avery, J.*), upon an agreed statement of facts, for the advice of this court.

From the record the following facts appear:

Susan Washburne Bishop died, at Bridgeport, on September 27th, 1923, leaving a will and codicil. She left surviving her a daughter, Natala Bishop Reyburn, and a son, William D. Bishop. By the provisions of the will and codicil, the testatrix, after making certain bequests, left the residue of her estate to the plaintiff in trust.

The legacies and devises bequeathed and devised up to and including that made in the tenth article thereof,

have been paid and satisfied, and no question arises in regard to them.

By article eleven, there was bequeathed to the plaintiff in trust the sum of $6,000, with the direction that such bequest should be paid by any six $1,000 five per cent bonds, which the plaintiff might choose, from the estate of the testatrix. The said bequest was in trust, to pay the net income to Marie W. Fowler, a sister of the testatrix, during her life, and upon her death to pay the income to a niece of the testatrix, Sally A. W. Fowler.

By article twelve, a bequest was made to the Fidelity Trust Company of Philadelphia of $4,000, in trust, to use the net income for the care of the family homestead of the testatrix in Maine.

By article thirteen, the testatrix bequeathed to each child of her daughter, who might be living at the time of her death, $15,000, with the provision that if any grandchild, entitled to this bequest, had not arrived at the age of twenty-five years, such grandchild's bequest was to be held in trust by the plaintiff, to expend the income and such part of the principal, as the trustee should deem proper, for the education of such grandchild and to pay over the unexpended portion thereof to such grandchild, when she or he arrived at the age of twenty-five years. Article thirteen also provided that all the gifts made therein should vest at the death of the testatrix.

The codicil bequeathed to the plaintiff, in trust, $6,000, to hold the same and pay the net income thereof quarterly to the son of the testatrix, during his life, and provided, that upon the death of the son, the principal should be paid to a granddaughter, Susan Reyburn.

The residue of the estate was then given to the plaintiff in trust, one half to be held for the testatrix's

daughter, the daughter to receive the net income thereof, in quarterly payments during her life. The remainder of said half, of which the daughter was made the life beneficiary, was given to the lawful issue of the daughter, who might survive her. In the event that the daughter of the testatrix left no issue surviving, then the income was given to Marie W. Fowler, a sister of the decedent, during her life, and on the death of her sister, the remainder to a niece and two nephews, Sally W. Fowler, Elihu Fowler and John Fowler. The remaining one half of said residue was devised to the plaintiff in trust, to hold the same and pay the net income thereof, in quarterly payments, to the son of the testatrix, during his life. The remainder of the second half of the residue was devised to the lawful issue of the son of the testatrix, who might survive him. Under the terms of the will, the remainder of the residue was not to be paid to the issue of the daughter or son until such issue reached the age of thirty years. The will further provided, that if the son died leaving no issue, then the remainder of the second half of the residue was to be divided as follows: one quarter among certain charitable institutions in the city of Bridgeport, defendants in this action, and the remaining three quarters to the lawful issue of the testatrix's daughter.

The estate of the testatrix, at the time of her death, consisted of real estate and personal property, as appears by the inventory, Exhibit C, of the value of $603,186.75. The appraised value of the personal property was $281,089.04. The total of the ante-mortem claims and estimated taxes and expenses in the settlement of said estate amounts to $73,395.05. The gifts and bequests made by the testatrix, apart from the residuary devise and bequest, amounted to $67,845.50.

The principal real estate owned by the testatrix, at

the time of her death, consisted of an undivided one half of business property in Bridgeport, known as the Bishop Block and Arcade. The undivided one half of the real estate was subject to a mortgage of $80,000, which mortgage was placed thereon by the plaintiff, as executor, upon order of the Court of Probate, since the death of the testatrix. The mortgage was placed thereon to borrow money to pay a prior mortgage incumbrance of the same amount.

Under the statutes of Connecticut, all property, taxable in the city of Bridgeport, must be listed, each year, on or before October 1st, in the name of the person owning the same on the preceding September 1st. The taxable property of the decedent, in the city of Bridgeport, owned by her on September 1st, 1923, was listed for taxation in September, 1923. Taxes levied in Bridgeport in February, on the lists, filed during the preceding September, and taxes on the list of 1923, were levied in February, 1924. The taxes levied against the property of the decedent, on the list of 1923, amounted to $11,270.38, the taxes on the real estate being $10,733.48.

During the administration of the estate, the income earned by the estate, up to October 1st, 1924, amounted to $43,848.26.

There was no separation of the trust funds until a year after the death of the testatrix, and during that period all of the personal estate was managed as an entirety.

The Court of Probate for the district of Bridgeport limited a period for the presentation of claims against the estate, and during that period neither Marie B. Charlier nor Lorenzo Semple, trustee, presented a claim against the estate.

To provide by purchase an annuity payable $1,000

at the end of every three months, during the life of a woman, fifty-three years old, would cost $56,850.

The gains on the sales of personal property, during the administration of the estate, were $4,900.

In 1911, for a valuable consideration, the testatrix, for herself, her heirs and executors, entered into an agreement with Marie B. Charlier, to pay the latter $4,000 per annum, in equal quarterly instalments of $1,000 each, during the life of Marie B. Charlier. As part of the agreement, the testatrix executed a bond in the sum of $105,000, conditioned on the faithful performance of the agreement. To secure the bond and agreement, the testatrix mortgaged to the defendant Lorenzo Semple, trustee, the undivided one half interest in the real estate known as the Bishop Block and Arcade. At the time of the death of the testatrix, Marie B. Charlier was fifty-three years of age.

In the agreement with Marie B. Charlier, the following provisions, among others, appeared: "FIRST: Should any default be made in the payment of any instalment of said annuity on any day on which the same is made payable as above provided and should such instalment remain unpaid and in arrear for the space of fifteen days then and from thenceforth, that is to say, after the lapse or expiration of such period of fifteen days, so much of said principal sum of one hundred and five thousand dollars shall be due and payable as will suffice to pay all arrears of said annuity, all expenses incurred by the obligee in consequence of such default and the sum of one hundred thousand dollars, anything herein or in the mortgage securing said obligation and this agreement to the contrary notwithstanding; said arrears and expenses shall be paid to the obligee; and said sum of one hundred thousand dollars shall be paid to the trustee or his successors, who shall take and receive the same in trust

nevertheless to invest and reinvest said sum of one hundred thousand dollars from time to time during the life of said obligee in such securities as under the laws of the State of New York are legal investments for trustees, and out of the income derived therefrom to pay the expenses of administering such trust, including the commissions on income allowed by the laws of the State of New York to trustees, and said annuity of four thousand dollars to said obligee in quarterly instalments as aforesaid, rendering the overplus, if any, to the said obligor, her executors, administrators and assigns; and upon the death of the said obligee to pay and turn over to the obligor, her executors, administrators and assigns the principal then remaining out of said capital sum of one hundred thousand dollars with any accumulations of income over and above the annuity payable to the obligee, less charges and deductions lawfully chargeable against the same, including the commissions allowed by the State of New York to trustees on account of receiving and paying out principal; it being understood that the annuity under said trust shall run from the date to which such annuity may have been paid pursuant to other provisions of this bond and agreement. . . .

"FOURTH: In case the amount of net proceeds from the security resorted to shall be less than one hundred thousand dollars the obligor, her executors or administrators shall have the right to postpone resort to her personal liability on this bond and agreement for the deficiency, by paying to the trustee for account of the obligee, her executors, administrators or assigns, as each instalment of annuity falls due as an addition to the net income earned by said net proceeds, a sum sufficient to' make up the full amount of such instalment; and so long as the obligor, her executors or administrators, so make up the full amount of such an-

nuity, the personal liability hereunder shall be deemed to be extended and resort shall not be had to the personal liability of the obligor under this bond and agreement during that time. In ascertaining such shortage in said annuity, the obligor, her executors or administrators shall not be charged on account of capital losses suffered by the trust after receipt of trust funds, nor on account of uninvested capital."

If the terms of any provisions of the will are deemed essential to the discussion of the case, they will be inserted in the opinion.

The following are the questions submitted to us for advice:

1.  Shall the said taxes, or any part of them, levied by the city of Bridgeport on the list of 1923, on the taxable property of said decedent, included in the grand list of said city, be allowed by or credited to the said executor as an ante-mortem claim against the estate of said deceased?

2.  If so, are they payable primarily out of the personal assets on the same footing as the ordinary debts of the testatrix?

3.  If not, against whom are they chargeable?

4.  As between the real estate and the personal estate left by the testatrix, is the real estate to be exonerated from said mortgage debt of $80,000 principal and interest and from said annuity obligation secured by mortgage?

5.  If the real estate is to be exonerated from said annuity in whole or in part, how shall the said executor provide for the payment of said annuity?

6.  If the payments by the plaintiff by virtue of said annuity obligation are to be made out of the residuary estate, are the same chargeable, as between the life tenants of the residuary estate and the remaindermen,

against income or principal or partly against both, and if the latter, in what proportion?

7. In the ascertainment of the obligations to be discharged by the plaintiff and the settlement of the administrations of the estate consequent thereon, including deduction of debts for the determination of the succession or inheritance tax due to the State of Connecticut, at what amount shall the said annuity obligation be reckoned?

8. In reference to the bequests made by articles eleven, twelve and thirteen and by the codicil, are the Fidelity Trust Company, William D. Bishop, and the children of Natala Bishop Reyburn, entitled to income from the death of the testatrix to the establishment of the funds thereby created, and if so, shall the net income which has arisen from the entire estate be the basis, or the net income exclusive of that arising from the residuary estate, or the net income exclusive of that arising from the real estate?

And is Marie W. Fowler entitled to interest at the rate of five per cent per annum from the death of the testatrix or at what rate?

9. What disposition is to be made of the gross income which arose from the personal property sold, or used to provide for payments of debts, expenses of administration, succession and estate taxes or duties, and legacies, said income being dividends and interest arising between the death of the testatrix and the time of such sale or use?

10. Against whom or against what property shall the plaintiff charge the Federal income tax payable with respect to the net capital gains resulting from sales of securities left by the estate?

*William Webb,* for the plaintiff.

*Carlos S. Holcomb,* for the defendant William H. Blodgett, Tax Commissioner of the State of Connecticut.

*Arthur M. Marsh,* for the defendants Natala Bishop Reyburn, William D. Bishop, Marie B. Charlier, Lorenzo Semple, individually and as trustee. and Marie W. Fowler.

*Thomas M. Cullinan,* for the defendants Susan W. Reyburn, Nathaniel R. Reyburn, Thomas M. Cullinan, guardian *ad litem,* Sally A. W. Fowler, Elihu W. Fowler, John E. Fowler, The Bridgeport Hospital, The Visiting Nurse Association of Bridgeport, The Bridgeport Protestant Orphan Asylum, and The Bridgeport Protestant Widows Society.

Curtis, J. It appears from the record that this estate is one in which the personal estate is ample to meet all cash legacies, indebtedness and expense of administration, and further, that all the residue of the estate real and personal is given to trustees in trust to pay the income therefrom without discrimination between income from real or personal estate to certain persons with remainder over.

Questions one, two, three and ten relate to the payment of certain taxes. The will, paragraph eighteen, provides as follows: "ARTICLE EIGHTEENTH. It is my will that any and all inheritance or other taxes charged upon my estate or any legacies or devises hereby given be paid by Executor out of the residue of my estate, and be not deducted from the amounts of the respective legacies and devises."

The tax levied by the city of Bridgeport on the list of 1923, referred to in question one, and the Federal income tax referred to in question ten, are clearly

included within the phrase "other taxes" in this article and should be paid under this paragraph.

Under the conditions of this estate, the provision that taxes shall be paid "out of the residue," has the effect of emphasizing the testatrix's intent that her estate shall deal with taxes as a charge against the estate, payable primarily out of the personal assets, as ordinary debts are paid.

In accord with the law of this State, the real estate is to be exonerated from the mortgage debt of $80,000, which was placed thereon in substitution for a mortgage that existed at the testatrix's death. The mortgage and interest thereon should be paid as any ante-mortem debt. There is no provision in the will indicating that this indebtedness, principal and interest, is to be otherwise discharged. On the contrary, article first of the will provides: "I direct that my just debts and funeral expenses be paid by my Executor hereinafter named." And this indicates an intent that the mortgage debt be so paid.

In *Beard's Appeal,* 78 Conn. 481, 484, 62 Atl. 704, we say, as to a mortgage indebtedness on certain real estate and the duty of an administrator to pay it: "His authority proceeded from two things: the fact . . . that the lands were subject to this mortgage indebtedness, and the rule of law that any such indebtedness must be discharged from the general personal estate, if it be adequate for that purpose and can be used without prejudice to the rights of unsecured creditors. This fact and this rule made it his duty to pay both the interest and the principal due upon" the mortgage note.

There was only one way that the real estate could be exonerated from the liability of the mortgage securing the annuity obligation to Mrs. Charlier, and that was by the payment of $100,000 in accord with the

agreement between the testatrix and Mrs. Charlier, recited in the statement of facts. That course was not one that the executor was required to pursue.

It is an administrative question in the settlement of the estate, whether or not the executor should adjust this obligation and exonerate the real estate by the payment of this $100,000, or should purchase an annuity contract to meet the payments to Mrs. Charlier under the contract, or should reserve funds sufficient to enable it to meet these payments under all contingencies; the life tenants and remaindermen could be consulted.

The obligation to Mrs. Charlier consists of a series of indebtedness of $1,000 each, payable quarterly for an indefinite period. These are ante-mortem debts for the payment of which an adequate amount of the *corpus* of the estate must be appropriated. If such a sum is maintained by the executor for such purpose, the income from that fund should also be used for such purpose, and any balance at her death would become a part of the residue.

As to question nine, asking what disposition is to be made of the gross income which arose from the personal property sold or used to pay debts and administration expenses, the rule stated in *Allhusen* v. *Whittell*, L. R. 4 Eq. Cas. 295, 303, to the following effect, governs: "It is necessary to ascertain what part of the personal property, together with the income of such part for a year, would be wanted for the payment of debts, legacies and other charges, during the year, and the proper and necessary fund must be ascertained by including the income for one year which must arise upon the fund which may be so wanted." Williams on Executors, Vol. 2, p. 699; *Williamson* v. *Williamson*, 6 Paige (N. Y.) 298.

It is obvious that an executor can only approximate

the sum that will be required for the payment of debts and expenses of settlement, before the time limited for the presentation of claims has expired. Also the claims presented may bear interest. The income from the fund used to pay debts may approximate the interest accumulating on the debts. Under this rule the income from such fund, if not used for the payment of debts, becomes a part of the *corpus* of the estate, replacing a part of the *corpus* taken in excess of the actual requirements.

As to question seven, the annuity obligation should be reckoned under our law, for the determination of the succession or inheritance tax due the State, at such sum as would purchase an annuity contract to pay $1,000 quarterly to Mrs. Charlier, during life from the death of the testatrix; the agreed facts fix this sum at $56,850.

As to question eight: The bequests made in articles eleven, twelve, thirteen and the codicil of the will bear interest from the date of the death of the testatrix; even where not specifically so provided, the law of the State provides. *Webb* v. *Lines,* 77 Conn. 51, 58 Atl. 227; *Hewitt* v. *Hicock,* 96 Conn. 176, 179, 113 Atl. 172.

The bequest in article eleven, in trust for Mrs. Fowler, provided that the bequest of $6,000 should be paid by any six $1,000 five per cent bonds that the trustee might choose; this we deem as expressing an intent that Mrs. Fowler should receive the income from such selected bonds from the date of the testatrix's death.

As to the other trust funds created by these paragraphs, since the personal property of the estate was managed as an entirety during the first year, the income earned by the personal estate as a whole is treated under our law as the rate of income earned by

each fund. *Webb* v. *Lines,* 77 Conn. 51, 58 Atl. 227; *Fanning* v. *Main,* 77 Conn. 94, 58 Atl. 472.

This rate is conceded to have been 4.87 per cent. Therefore the other trust funds involved in question eight carry interest at that rate from the death of the testatrix.

The answers to the questions presented by the reservation sufficiently appear in the foregoing discussion.

The Superior Court is advised to render judgment accordingly. No costs to either party will be taxed in this court.

In this opinion the other judges concurred.