In the Matter of the Estate of MARY DE SILVER LORD, Deceased.

Surrogate's Court, New York County, March 12, 1929.

*Curtis, Mallet-Prevost, Colt & Mosle,* for the petitioner.

*Davis, Polk, Wardwell, Gardner & Reed,* for St. John's Guild.

*Mastin & Nichols,* for St. Bartholomew's Church.

*Cornelius C. Webster,* for John B. Lord.

*White & Case,* for J. B. Lord and the Bankers Trust Company.

FOLEY, S. Two questions of construction are presented for determination in this accounting proceeding:

(1) The first question involves the interesting and increasingly recurrent situation as to the ascertainment of the true residue of an estate, and the division of income and principal where the residue is given in part to a legatee outright and in part in trust. Paragraph 26 of the will divides the residuary estate "into three equal parts," one of which is bequeathed absolutely to the decedent's husband and the other two of which are given to trustees for the benefit of the grandchildren of testatrix, with directions, unimportant here, for payment to them of installments of principal at certain ages. A dispute has arisen as to the disposition of the net income earned by the residuary estate during the year of administration. The husband contends that one-third of said income should be paid to him as a valid accretion on his one-third share of the residue. The argument made in support of his contention is that equality was intended among the residuary legatees and, therefore, the income should be equally divided one-third to the husband as a general legatee and two-thirds to the trusts for the benefit of the grandchildren. The trustees on the other hand propose to compute the true residue under the rule laid down in *Matter of Benson* (96 N. Y. 499). The primary rule is that all income, not otherwise disposed of by the terms of the will, which accumulates during the administrative year, becomes principal and must be added to the tentative residue to ascertain the true residue. In cases where the residue is given absolutely, difficulty seldom arises under this primary rule, because both income and principal go to the same persons — the outright residuary legatees. But where the residue is given wholly in trust, or partly in trust and partly outright, as is the case here, the true residue must be ascertained by a division of the income. Under such cir-

cumstances the *Benson* case requires: *First*, the computation of the net income earned by the estate during the executorial year. *Second*, the allocation of this income between technical income due the life tenants and the amount of income to be treated as a capital accretion to the residue. This allocation is made in accordance with the fractional shares into which the residue is divided by the will. *Third*, the ascertainment of the tentative residue, or tentative balance of assets, to which must later be added the accretions to capital to obtain the *true residue*. In the present estate there is no dispute as to the method of computing income. The difficulty arises in its division. In the allocation of income regard must be had to the principle of construction which gives income from the date of death to the life tenants of the trust. (*Matter of Bird*, 241 N. Y. 184; *Matter of Stanfield*, 135 id. 292, 294.) In accordance with that rule the courts, in computing accretions to a residuary estate, parts of which are directed to be held in trust, have separated the income earned on the trust principal and payable to the beneficiaries of the trusts, because that part of the income became payable, by the terms of the gift, from the death of testator. It is part of the gift of the trust income, and belongs to the life beneficiaries and not to the remaindermen. (*Matter of Stanfield, supra; Matter of Bird, supra; Lawrence v. Littlefield*, 215 N. Y. 561.) All other income, however, which is undisposed of by the will must be included in the principal of the residuary estate. (*Matter of Allen*, 151 N. Y. 243, 249.) In the present case, therefore, the proportionate share of net income which must be set aside as income for the life tenants of the trusts is two-thirds, since the trusts are two-thirds of the residue. The remaining one-third which was not disposed of by the will is to be added as an accretion to the capital of the tentative residue, and divided into three parts as directed by the will. Under this computation one-ninth of the total net income becomes part of the true or final residue to the husband outright, and the remaining two-ninths (or two-thirds of the one-third in question) are to be added to the corpus of the trusts. The rule in the *Benson* case, while in one respect arbitrary in the mode of computation, results in equality between the different shares and leads to an equitable distribution to all persons interested, whether as outright legatees, life tenants or remaindermen. It is arbitrary in only one minor respect, since the life tenants of the trusts do not receive income for the administrative year on the accretion of principal. But this amount is usually so insignificant that it has been disregarded. (*Stanley v. Stanley*, 142 Atl. 851.) By further recomputation, if necessary, this slight inequality could be corrected. In the present estate this loss of income is

only that computable on two-ninths of the total accretion. The outright legatee actually benefits by the application of this method. The rule in the *Benson* case has been long followed in accountings in the Surrogates' Courts. (*Matter of Brokaw*, 165 N. Y. Supp. 700; *Matter of Emery*, 134 Misc. 714; *Matter of Brookfield*, 109 Misc. 345. See, also, *Stanley* v. *Stanley*, 142 Atl. 851; *Williamson* v. *Williamson*, 6 Paige, 298; Harvard Law Rev. Rep. Dec. 1923, p. 250.) The paucity of the reported decisions applying the rule does not indicate any lack of acceptance, or evidence of non-compliance with it. On the other hand, it shows, as has been my experience, the general acceptance of the rule by representatives of estates, estate accountants, attorneys and the surrogates. Moreover, under the rule laid down in the *Benson* case, absolute equality, in accordance with the rules of construction, is accomplished. The contention by the husband here that the division is inequitable, or that he will suffer a loss or discrimination, is without foundation. It is an established rule of interpretation that an outright gift of part of a residue is a general legacy, and that the legatee thereof, in the absence of a different direction contained in the will, is not entitled to income, as such, on his legacy. The husband's position is, therefore, no different from what it would be if he were given a pecuniary legacy of a fixed amount payable out of the residue. Interest would not begin to run until the end of the executorial year. The equality made by the rule in the *Benson* case is more clearly demonstrated by applying the rule to actual figures. Assume that after the payment of all debts, legacies and administration expenses, the total assets of an estate in the hands of the executors amount to $945,000 at the end of the period of administration, and that of this amount $45,000 is net income earned during the year. If by terms of the will the residue was given one-third outright and one-third to each of two trusts, two-thirds of the income, or $30,000, would be treated as income payable from the date of death to the life tenants of the trusts, and one-third, or $15,000, would be added as an accretion to the capital of the three equal shares to establish the true residue. Each share would be $305,000, and the outright legatee would receive exactly the same amount as the trustees would receive as corpus of each of the two trusts, and thereby the plan of equality directed by the testator in the will for the division of the residue would be effected. This example also demonstrates the false theory for which the husband here contends. By his process, the outright legatee in the supposititious case would receive $315,000 as his one-third, whereas, each of the remaining miscalculated thirds would be only $300,000. Nor is there any foundation for the contention of the husband that there is an indication of intent in the

will that he was to receive one-third of all the income from the date of death. The testatrix could have provided that benefit for him, but she did not. She and the draftsman are charged with knowledge that a general absolute legacy of part of the residue does not carry income, as such, from the date of death, and they are charged with further knowledge of the long-established rules quoted above for the fixation of the respective shares of the residue. When the testatrix made her will, therefore, she is presumed to have known that the gift of two-thirds of the residue in trust carried the income (in the technical sense of the word) earned upon it, while the gift to the husband did not. (*Matter of Stanfield, supra.*) I hold further that the direction in the will to divide the residuary estate as speedily as possible, evidenced no purpose on the part of the testatrix that income was to be paid to the husband from the date of death. There cannot be any claim of discrimination between the outright legatee and the life tenants of the trusts. The nature of the interests of each is different. The former takes the fixed share of the residue when ascertained, and the latter as *cestuis* take income on their respective shares of the same fund from the date of death. The true test of equality is the division of the shares as between the husband on one hand, as absolute residuary legatee, and the trustees on the other, representing the remainder-men. The circumstances in *Matter of Harden* (164 N. Y. Supp. 1014; mod., 177 App. Div. 831; affd., 221 N. Y. 643) are different from the present case, and the opinion of the Appellate Division, or its affirmance without opinion by the Court of Appeals, cannot be construed as a change in the basic rule laid down in *Matter of Benson*. The method proposed by the trustees, pursuant to the *Benson* and *Williamson* cases, is, therefore, adopted by the surrogate.

(2) The second question presented is whether or not bequests of $25,000 to St. John's Guild, and $10,000 to the Rector, Wardens and Vestry of St. Bartholomew's Church, mentioned in paragraphs 2, 15 and 16 of the will, are demonstrative legacies or specific legacies. I hold that the bequests are demonstrative legacies. (*Crawford v. McCarthy*, 159 N. Y. 514; *Matter of Tallman*, 131 Misc. 863; *Matter of Miller*, 118 id. 877.) I hold further that these bequests must be paid in full. In the *Crawford* case the Court of Appeals stated: "A demonstrative legacy is a bequest of a certain sum of money, stock or the like, payable out of a particular fund or security." In *Matter of Miller* I held that a bequest of a designated amount to be paid out of moneys realized from the sale of certain realty was demonstrative. In the present case we have the first element defined in the *Crawford* case, for here there is a general bequest in a fixed amount. The legacies are described by the

testatrix in paragraph 2 of the will as "bequests of $25,000 in favor of St. John's Guild * * * and $10,000 in favor of the Rector, Wardens and Vestry of St. Bartholomew's Church * * * contained in the Fifteenth and Sixteenth clauses of this my will." Paragraph 15 directs the executors to sell so much of decedent's jewelry as may be necessary to produce the sum of $25,000, payable to St. John's Guild, which is directed to be applied to the endowment of five cribs in its Seaside Hospital. It appears that the testatrix had been a contributor to the guild for several years before her death and had received several copies of its annual reports, in which it was stated that $5,000 was a complete endowment in perpetuity of a crib in this hospital. If an abatement was intended, the expressed purpose of the gift would fail. Paragraph 16 contains a bequest to the Rector, Wardens and Vestry of St. Bartholomew's Church of the sum of $10,000, and directs the executors to sell so much of decedent's jewelry as may be necessary to produce said sum of $10,000. The direction to pay the legacies out of the proceeds of the sale of the jewelry constitutes the second element defined in the *Crawford* case. The proceeds of the sale of all of decedent's jewelry amount to only $18,044. In accordance with my determination that the legacies are demonstrative, and under the authorities above mentioned, resort must now be had to the ample general assets of the estate to make up the deficit caused by the insufficiency of the fund pointed out for the payments. I hold further that the legacies in question vested at the date of death of testatrix (*Matter of Seif*, 212 App. Div. 558, 566), and that the legacy to the Rector, Wardens and Vestry of St. Bartholomew's Church was absolute, and the change subsequent to the death of testatrix in the existence of the clinic did not affect the right of the principal legatees to receive it.

Submit decree on notice construing the will and settling the account accordingly.