In the Matter of the Estate of ROSIE BERNHEIMER, Deceased.

Surrogate's Court, New York County, January 24, 1930.

*Parsons, Closson & McIlvaine,* for the petitioners.

*William L. Carns,* special guardian.

*Bronson Winthrop,* special guardian of Phyllis W. Goodhart.

*Stroock & Stroock,* for Montefiore Hospital.

*Guggenheimer, Untermyer & Marshall,* for Henry Ickelheimer, as committee of Leopold Bernheimer.

*Hoadly, Lauterbach & Johnson,* for Mt. Sinai Hospital.

*Strassbourger & Schallek*, for Hebrew Orphan Asylum.

*Cornelius J. Sullivan*, for New York Society for Prevention of Cruelty to Children.

*Cook, Nathan & Lehman*, for Hebrew Technical School for Girls.

FOLEY, S. In this accounting proceeding a question arises as to the manner in which the income earned by the estate during the executorial year should be divided among the residuary legatees. In her will the testatrix provided numerous pecuniary legacies to individuals and to charities. She then made direction for the disposition of the residue, of which one-third was given outright to her sister, Florence B. Walter, one-third in trust for the benefit of her brother, Leopold A. Bernheimer, and the remaining one-third in trust for the benefit of her grandniece, Phyllis Walter Goodhart. It is not disputed that the life tenants of the two trusts are entitled to a certain portion of the income earned during the period of administration from the date of the death of the testatrix. The sister, Florence B. Walter, who took absolutely her share of the residue, contends likewise that under the terms of the will she is entitled to a *pro rata* share of such income. On the other hand, the trustees of the respective trusts and the representatives of the contingent remaindermen contend that the outright residuary legatee is not entitled to income as such from the date of death.

They argue that the sister is entitled only to her fractional share of the residue as computed under the rule laid down in *Matter of Benson* (96 N. Y. 499) and followed by me in *Matter of Lord* (134 Misc. 198). In that case I endeavored to restate the rules for the ascertainment of the residue and the method of allocation of income in estates where the residue was given in part to a legatee outright and in part in trust. I pointed out that the rule in the *Benson* case required, *first*, the computation of the net income earned by the estate during the executorial year; *second*, the allocation of the income between technical income due the life tenants and the amount of income to be treated as a capital accretion to the residue, which allocation is made in accordance with the fractional shares into which the residue is divided by the will; *third*, the ascertainment of the tentative residue, or tentative balance of assets, to which subsequently must be added the accretions to capital to obtain the true residue. I also pointed out that the rule for division laid down in the *Benson* case was an equitable one, and resulted in equality in the amounts received by the residuary legatee and the trustees of the fractional parts representing the remaindermen.

The plan of distribution in the *Lord* case is very similar to the one involved here. I hold that the income earned during the

executorial year must be divided into three equal parts, one-third of which becomes payable to the brother as life tenant of his trust, one-third to the grandniece as life tenant of her trust, and the remaining one-third divided into three parts and added to each of the respective shares of the residue. After carefully examining the will, I am unable to find support for the contention of counsel for the sister that the testatrix intended that the sister should receive a full one-third of the income earned from the date of death of the testatrix. There is no token of intent that the gift to the sister was specific or demonstrative in nature and carried with it either the particular securities left by the testatrix or the income thereon. The title to these securities vested in the executors for the purposes of administration and distribution. Ultimately they became part of the residue, but subject to the power of the executors to equitably divide the entire residue into three parts. The gift to the sister, therefore, was not specific, but was a share of the general residue to be ascertained after administration.

The authorization of the testatrix to the executors, to allot her investments owned by her at the time of her death to any bequest or devise made in the will, did not change the nature of the gift, but constituted a grant of power to them in aid of distribution to the numerous general legatees and the residuary legatees, with the important factor that their discretion should be " absolute and uncontrolled." Similarly the suggestion in the last sentence of the 16th clause of the will that the executors should not dispose of any investments left by her, " unless necessary," furnishes no manifestation of a purpose to place the absolute gift on an equality with the gifts of income to the life tenants. Nor do the other parts of the will substantiate the claims of the sister. As in the *Lord* case, the testatrix when she made her will must be presumed to have known that the gift of income to the beneficiaries of the two trusts was independent of the gift of the principal. (*Matter of Stanfield*, 135 N. Y. 292.) She is charged with knowledge that the gift of two-thirds of the residue in trust carried the income (in the technical sense of that word) earned upon it, while the outright gift to the sister did not.

Submit decree on notice construing the will and settling the account accordingly.