In the Matter of the Estate of Thomas F. Ryan, Deceased.

Surrogate's Court, New York County, April 17, 1931.

*Kieffer & Woodward,* for the executor.

*Elihu Root, Jr.* [*Adrian C. Leiby* of counsel], for Clendenin J. Ryan, individually.

*Tibbetts, Lewis & Rand* [*Harland B. Tibbetts* and *William S. Savage* of counsel], for Chase National Bank of the City of New York and George F. Lewis, as trustees for Miriam F. Hebert.

*Miller, Otis & Farr,* for Margaret M. Ryan.

*John J. Kirby,* for Fathers of the Blessed Sacrament.

*Thomas I. Sheridan,* special guardian.

*Wayne Johnson,* special guardian.

FOLEY, S. The sole question for determination in this accounting proceeding is the method of the allocation of the income earned by the estate assets during the period of administration. Is all the income earned upon the funds used to pay administration expenses, debts and taxes payable to the life tenants, or is it to be added as an accretion to the capital of the residuary estate? I hold that the rule laid down in *Matter of Benson* (96 N. Y. 499) and restated in *Matter of Lord* (134 Misc. 198; affd., 228 App. Div. 771) is controlling here. The established rule in our State applies not only to income earned on funds used to pay legacies, but also to income derived upon funds necessary for the payment of taxes, debts or administration expenditures. In the *Lord Case* (*supra*) the method of allocation involved income on all these forms of expenditures and such income was directed to be added to the tentative residue in order to ascertain the true residue. Other authorities have applied this method. (*Williamson* v. *Williamson,* 6 Paige,

298, 306; *Matter of Brokaw*, 165 N. Y. Supp. 700; *Matter of Reese*, N. Y. L. J. June 3, 1930, p. 1232; *Matter of Emery*, 134 Misc. 714; *Allhusen* v. *Whittel*, [1867] L. R. 4 Eq. 295.)

There is no evidence of intent in the present will that the gross income earned on all the funds during the administrative period should be paid to the life tenants of the various trusts. The testator or the draftsman of the will could have expressly provided that the life tenants receive these increased benefits. They did not so provide. I find no support for the particular contention of the learned counsel for one of the life tenants that article 5 of the will indicates such a purpose. The direction there was simply to pay the inheritance and other taxes out of the " capital of my residuary estate as part of the expenses of the settlement of my estate." The interpretation of what was the " capital " of the residue was to be tested by the existing rule of the *Benson* decision and cognate cases. Nor does article 6 express any intent to exempt this estate from that rule with respect to income earned on the funds used for disbursements. That article was primarily a grant of authority and discretion to the executors and trustees to retain investments left by the testator. Its reference to " income " may have contemplated the treatment of earnings on wasting assets *as income* in order to avoid amortization allowances. It was plainly related to article 9 which directed that there be no deductions from income for sinking fund purposes. No express intent to depart from the rule laid down by the authorities cited above can be found in the instrument. The residue must be computed and the income must be allocated in accordance with the rules laid down in *Matter of Lord (supra)*.

Submit decree on notice settling the account accordingly.