## CENTRAL NATIONAL BANK OF CLEVELAND, Trustee, Plaintiff v. COYLE et, Defendants.

Probate Court, Cuyahoga County.

No. 336511.

Lawrence G. Knecht, Cleveland, representing Central National Bank of Cleveland.

J. F. Smith, Cleveland, representing defendants Naomi A. Coyle and Naomi Dempsey.

### OPINION

By BREWER, J.

The Central National Bank of Cleveland, as Trustee under the will of Henry E. Coyle, deceased, filed its petition for a construction of the will and instructions.

Henry E. Coyle, in Item I of his will, provided "that all debts be first paid out of the principal of my estate". After making certain bequests of personal effects, the will directed that all the "remainder" of the estate be held in trust. The trustees were directed to pay either out of income or principal all taxes which may be a charge upon the "trust estate", and to pay the "entire net income remaining" to his widow.

During the administration it was necessary for the executors to sell certain stocks belonging to the estate in order to pay various obligations, in which were included the year's allowance for the widow, estate taxes and inheritance taxes, which amounted to over $100,000.

Between the date of the death and the time when the stocks were sold, cash dividends were declared and paid upon these stocks in the amount of approximately $6,000.

It is agreed between all parties to the lawsuit that the income was from ordinary cash dividends declared and paid after the testator's death.

The question for the Court to determine is whether the income derived from property which was later sold to pay debts, legacies and expenses, goes to the life beneficiary or to the remainderman, or whether it is apportioned between them.

The Court, after a review of the following Ohio authorities, believes that there has been no clear pronouncement on the present question, or an adaptation of any rule definitely made in this State.

**Davidson v Savings & Trust Co., 129 Oh St 418,**

**Perkins v Perkins, 22 O. C. C. 238,**

**In re Estate of Messang, 29 N. P. (N. S.) 60,**

**Hegner v Hegner, 9 Oh Ap 147,**

**Biles v Webb, 118 Oh St 346.**

Particular emphasis has been placed upon the decision in the case of **Davidson v Savings & Trust Co., 129 Oh St 418.** Part three of the syllabus reads as follows:

"Where one is bequeathed the income from certain property for life he is entitled to such income upon the death of the testator in the absence of anything in the will to the contrary."

However, this case involved the question of a proper division of income of an estate where the testator's widow made an election to take against the will, and involved a division of the income between the named beneficiaries so affected.

A study of the law of the several states discloses that there are four different rules relating to the ownership of income bequeathed, as in the case at bar, commonly referred to as the English rule, the New York rule, the New Jersey rule, and the Massachusetts rule.

Under the English rule, the executors will be regarded as having paid the debts and legacies with such a portion of the total estate as, together with the income of that portion for one year, was necessary for the payment of the liabilities of the estate. The portion of the income attributable to the taxes and debts becomes in effect a part of the residue later payable to the remainderman. This rule was established in England in the pronouncement in Allhusen v Whittel, L. R. 4 Eq. 295, decided in 1867.

The New York rule provides that income received during the period of administration which was derived from property later sold to pay legacies and debts, is deducted from the gross income, and is added to the principal.

The New York rule and the English rule are substantially similar in the dollars and cents results obtained, although computed somewhat differently.

The New Jersey rule, in ascertaining the division of income as between life tenants and remaindermen, gives to income the earnings on corpus as they are earned, and charges debts and legacies against corpus as they are paid, but the interest paid thereon is charged against income.

Commercial Trust Co. of New Jersey v Gould, 105 N. J. Eq. 727,

Berger v Bernet, 95 N. J. Eq. 643.

These two cases appear to be the only ones applying the rule, and because of its limited application and following, we merely state the rule.

Under the Massachusetts rule the income, regardless of whether the assets from which the income was derived were later used to pay debts or not, is given to the life tenant.

The New York and English rule should be considered together, as they are based upon the same fundamental theories and reasonings.

Among the cases championing the New York-English rule are the following:

Williamson v Williamson, 6 Paige 98 (N. Y. 1837),

Matter of Benson, 96 N. Y. 499,

Matter of Ryan, 140 Misc. 364,

Matter of Reese, 141 Misc. 428,

Wethered v Safe Deposit Trust Co., 79 Md. 153,

York v Maryland Trust Co., 150 Md. 354,

Proctor v American Sec. & Trust Co., 98 Fed. (2d), 599,

Equitable Trust Co. v Kent, 11 Del. Ch. 334,

Bridgeport v Fowler, 102 Conn. 318,

Graingers' Exrx. v Pennebaker, 247 Ky. 324.

White v Chaplin, 84 N. H. 208.

Among the cases advocating the Massachusetts rule are the following:

Treadwell v Cordis, 5 Gray 341, Mass. 1855,

McDonough v Montague, 259 Mass. 612,

Old Colony Trust Co. v Smith, 266 Mass. 500,

Wachovia Bank & Tr. Co. v Jones, 210 N. C. 339,

City Bank Farmers' Trust Co. v Taylor, 53 R. I. 126.

A better understanding of the reasons for the variance in the two well adhered to rules might be best illustrated by citing a case under each rule and the reasonings of the Courts thereunder.

A splendid example of the application of the New York-English rule and the reasons for so holding can be found in York v Md. Trust Co., 150 Md. 354, in which the will of the testator directed that all of the testator's debts should be paid out of his estate "as soon as the same can conveniently be done". He bequeathed $5,000 to a hospital, and $100,000 to his wife, and devised and bequeathed "all the rest, residue and remainder" of his estate to the Maryland Trust Company in trust to pay "all charges and expenses necessary and requisite for the proper care, management and preservation of the trust estate", including reasonable compensation to the trustee. The will directed the trustee to pay an annuity from the net income to the testator's mother-in-law, and provided that "the balance of said net income derived from said trust estate, * * * my said trustee shall pay over quarterly to my wife, Mary Read York, so long as she shall live".

On page 367 the Court states:

"There is no provision requiring the payment of the income from the entire estate to the appellant; the will specifically limits her income to the balance of income received from the trust estate, and the trust estate is not the testator's gross estate, but 'the rest, residue and remainder' of his estate after the payment of the debts and specific legacies. Even if these provisions do not indicate clearly and positively an intention on the part of the testator to limit his wife's income to the income from his net estate, after the payment of debts and legacies, they certainly cannot be said to indicate in any way a contrary intention; and, as we saw above, in the absence of a contrary intention on the part of the testator exhibited in his will, the general rule is that a life tenant, though entitled to income from the death of the testator, is only entitled to the income on the residue of the estate.

"This principle, which is supported by the great weight of authority, is clearly recognized in the Wethered case, supra, in which Judge Boyd said: 'Of course the income on so much of the principal as must be sold and used for the purposes herein stated (payment of debts and expenses), will not be

payable to the life tenants as the residue of the estate is lessened to the amount of the principal so used.' See also 40 Cyc. 1882 and many cases cited in notes."

On page 368 the Court further states:

"The rule we have announced would also seem to be supported by reason, because if the life tenant is to receive the income from the gross estate while the corpus bears all the debts and expenses, it can readily be perceived that pending the settlement of the estate the corpus might become seriously impaired. For instance, in the present case, if it had taken four or five years to dispose of the assets at advantageous prices, and during this time the interest charges on the million dollar debt had been charged against the corpus, while the entire income went to the life tenant, the principal would have been depleted to the extent of two or three hundred thousand dollars, and in an extreme case the whole estate might be absorbed. On the other hand, under the rule we have applied the life tenant gets the income from the residue of the estate from the time of the testator's death. That is all the life tenant is entitled to after the estate has been settled, and in the absence of a contrary direction in the will, we are unaware of any sufficient reason why she should receive more while the estate is being administered."

In contrast, and following the Massachusetts rule, is the case of City Bank Farmers' Trust Co. et v Taylor, 53 R. I. 126, in which the testator, after making certain specific bequests, directed that his widow should receive a life income in the "rest, residue and remainder" of his estate. His executors paid from his personal estate all of his debts. During the period of administration, the executors collected large amounts of income which was used for the payment of debts. The trustees alleged that they were in doubt as to the amount of income payable to the testator's widow. The question is whether the beneficiary for life of the income of a trust fund consisting of the "rest, residue and remainder" of the estate is entitled to the income from that portion of his estate necessary to be used by his executor for the payment of his debts, liabilities and all federal and state inheritance taxes.

On page 129 of the decision, the Court said:

"It is the duty of the Court to ascertain and give effect to the intention of the testator as expressed in his will if not con-

·trary to established principles of law. This intention is to be ascertained by looking to the language of the whole will and the circumstances surrounding the testator." ·

On page 131 the Court continued:

"It is apparent from the reading of this will that the testator's wife was the first object of his solicitude and bounty * * * The testator knew that the federal and state inheritance taxes on his residuary estate would amount to several millions of dollars. He did not intend that any part of the income from his estate should be used for the payment of these taxes and thereby diminish the amount of income which his wife would receive. To accomplish this result he directed that these taxes should be paid out of the capital of his residuary estate. The testator probably knew that the inheritance taxes would greatly exceed the amount of his debts, funeral and administration expenses. It is unreasonable to suppose that any part of the income given his wife should be used to pay his debts * * * If he had intended that any portion of them should be paid out of income undoubtedly he would have used words indicating such an intention."

The concluding reasons given by the Court are found on page 134:

"A reason usually given for sustaining the contention made by the life beneficiary is that she is the first object of the testator's bounty. There is no presumption that the testator intended to favor a remote remainderman at the expense of the life beneficiary, or that the trust fund should be increased at her expense * * * We think that the rule stated in Old Colony Trust Co. v Smith, supra, is in accord with the intention of most testators and also has the merit of simplicity and ease of application."

Both the Massachusetts and New York-English rules seem to be supported by clear and convincing argument. However, · it is interesting to note that by statute the so-called New York rule is no longer the rule in New York. In New York the law was changed by statute in 1931 by the enactment of the Personal Property Law, Section 17b (Laws 1931 c. ·706.) In commenting upon the change, the Hon. James A. Foley, Chair-

man of the Decedent's Commission, and Surrogate of the County of New York, states in New York Bar Assn. Bull., Vol. 3, page 287, as follows:

"Finally, a new amendment has been drawn up by the members of the Commission and incorporated into a new section 17b of the Personal Property Law. This amendment will greatly simplify, especially in larger estates, the computation of the residue where the will gives the residue, wholly in trust, or partly in trust and partly absolute. In general, it provides for the payment of all income earned on the funds of the estate during the period of administration to the life tenant entitled to it under the terms of the will or to the absolute owner of the fractional part of the residue. The present rule of capitalizing income earned during the period of administration on funds of the estate used for the payment of legacies, administration expenses, taxation and debts, has been found to be needlessly complicated. It has imposed burdensome work upon attorneys and accountants. This amendment will change the rule and dispense with the method of computation set forth in the leading case of Matter of Benson, 96 N. Y. 499, and restated in Matter of Lord, 134 Misc. 197, affirmed 228 App. Div. 771."

There has also been considerable comment about the rule laid down in Allhusen v Whittell, L. R. 4 Eq. 295; In re McEuen, 2 Ch. p. 717. Mr. Justice Sargant stated:

"On the many occasions on which I have heard the rule discussed among practitioners at the Chancery Bar I have found the prevailing opinion to be that the rule in the set terms in which the order was drawn up in Allhusen v Whittell is not applicable indiscriminately and would work grave injustice where large sums have been expended in clearing the estate at intervals considerably prior to the end of the first year."

An interesting discussion of the Allhusen rule can be found in 30 Law Quarterly Review (English), page 481.

It is apparent that there is a vast diversity between the New York-English rule and the Massachusetts rule. Their paths can never cross, because the New York-English rule favors the ultimate beneficiaries, while the Massachusetts rule favors the life tenant.

After careful consideration of the above rules and the conclusions arrived at by their respective applications, it is the belief of this Court that both justice and equity can best be served in the present case and in all similar cases, and that generally the intention of the testator can best be fulfilled if the principles of the Massachusetts rule are followed by this Court.

This finding is based on the belief that the life tenant is generally the prime object of the bounty of the testator and is his first consideration, while the ultimate beneficiariy has secondary consideration and, therefore, any favoring between the life tenant and the ultimate beneficiary should be in behalf of the life tenant.

By following the Massachusetts rule the administration of both the estate and the trust can be greatly simplified since the complicated accounting necessary under the New York-English rule can be avoided. This would further tend to eliminate possible litigation which might arise as a result of the accounting.

The fact that the State of New York, by statute, has abrogated the rule established in its courts also indicates that the intention of the law generally is to favor the life tenant.

Therefore, it is the opinion of this Court that the dividends paid upon the stock subsequently sold to pay debts of the estate shall be considered a part of the income to which the life tenant shall be entitled under the terms of the will, and it is so decreed.