DETROIT TRUST COMPANY v. CORLISS.

1. WILLS—WIDOW'S ELECTION—ANTENUPTIAL AGREEMENT.
   Where will made different provision for widow than antenuptial agreement and widow elected not to take under the will but to stand on the antenuptial agreement, the provisions of the latter take priority over all the bequests and devises in the will.

2. HUSBAND AND WIFE—ANTENUPTIAL AGREEMENT—CONSTRUCTION—INCOME—PRINCIPAL OF ESTATE.
   Under provisions of antenuptial agreement that wife should have $5,000 per annum payable quarterly "from the interest and revenues of the property" of husband after death of latter and tax-free use of homes and further provision to set aside in trust sufficient property to insure the revenue to cover said allowance and the payment thereof to her, she was entitled, after his death, to recourse to the principal, if necessary, to make up deficiency of annual income to provide the annual allowance of $5,000 to her.

3. WILLS—WIDOW—ANTENUPTIAL AGREEMENT—ADMINISTRATION EXPENSES.
   While widow, standing on antenuptial agreement, might have complained that unobjected to payments to testator's son

----

REFERENCES FOR POINTS IN HEADNOTES
[1] 57 Am. Jur., Wills, § 1549.
[2] Power of trustee or court to intrench upon corpus when income is insufficient to pay amount which the trust instrument directs to be paid to beneficiary out of income. 136 A.L.R. 69.
[3] 14 Am. Jur., Costs, § 98.

and granddaughter pursuant to terms of will would not be properly treated as administration expenses; yet to those whose only claim to an interest in the estate comes through the will, such payments are treated as administration expenses even though the administrator had no right to make such payments excepting as for services.

4. ESTATES OF DECEDENTS—ANTENUPTIAL AGREEMENT—ANNUITY—WILLS—RESIDUARY LEGATEES.

Where neither antenuptial agreement nor will provided for purchase of annuity for widow and she elected not to take under the will, and the purchase of such an annuity would operate as a substantial detriment to the residuary legatees, the latter are entitled to the results that will accrue to them by handling the estate along the lines laid out in the will even though the estate would not be closed as soon as the purchase of an annuity would otherwise permit.

5. SAME—ANTENUPTIAL AGREEMENT—WILLS—CONSTRUCTION OF INSTRUMENTS.

Where antenuptial agreement provided for payment of $5,000 annually to widow from income of the estate with use of sufficient principal to make up deficiency, and neither will nor the antenuptial agreement provided for purchase of an annuity, provision of decree construing the instruments and permitting use of substantial portion of estate for such purpose to the detriment of the residuary legatees is reversed.

6. SAME—INCOME—ANTENUPTIAL AGREEMENT—TRUSTS.

Where deceased by an antenuptial agreement had charged the income of all his estate with the burden of providing an annual payment to the widow, the portion of his estate set aside by will for trust for his granddaughter was required to and liable to furnish its proportion of income from which the widow's annual payments should be paid.

7. TRUSTS—ANTENUPTIAL AGREEMENTS—RESIDUARY LEGATEES—CONSENT.

Where testamentary trust fund for testator's granddaughter took precedence of other bequests but was subordinate to widow's claims against estate by virtue of antenuptial agreement, a. payment is allowed granddaughter such as is presently determined as not to be so great as to jeopardize future payments to widow on condition that widow and residuary legatees consent to such payment to granddaughter in writing and, upon the widow's death, the

trust fund capital together with such portion of the remaining net income, if any, as such capital is proportionate to the average value of the principal of the estate during the income-producing period is ordered paid to granddaughter who has already reached age at which distribution is permitted by will.

8. COSTS—FAILURE OF ANY PARTY TO PREVAIL COMPLETELY ON APPEAL.

No costs are allowed on appeal from decree construing provisions of antenuptial agreement and will, where no party has completely prevailed.

Appeal from Wayne; Marschner (Adolph F.), J. Submitted January 14, 1949. (Docket No. 10, Calendar No. 44,092.) Decided May 18, 1949. Rehearing denied June 29, 1949.

Bill by Detroit Trust Company against Dorothy Montgomery Corliss and others to construe a trust, will and antenuptial agreement. From decree entered, defendants Holley appeal. Affirmed in part; reversed in part.

*Dickinson, Wright, Davis, McKean & Cudlip* (*Selden S. Dickinson* and *Donald R. Flintermann*, of counsel), for plaintiff.

*Louis Starfield Cohane* and *Regene Freund Cohane,* for defendant Dorothy Montgomery Corliss.

*Dykema, Jones & Wheat,* for defendant Elizabeth Danforth Corliss (Weems).

*Charles F. Delbridge* and *Charles F. Delbridge, Jr.,* for defendants Holley.

REID, J.   The bill in this case was filed by Detroit Trust Company, administrator with the will annexed

of the estate of John B. Corliss, deceased, for con-struction of the will of deceased, construction of an antenuptial agreement to which deceased was a party, and for instruction as to management of the property held in trust.

The residuary legatees and devisees, the two daughters of deceased, appeal from those portions of the decree of the lower court authorizing the administrator w.w.a. to take from the principal of the estate if the income proved insufficient to furnish $5,000 a year to the widow in pursuance of the ante-nuptial agreement, and further appeal from the portion of the decree authorizing the administrator to pay the widow sufficient sums to purchase an annuity agreement from a life insurance company in lieu of said $5,000 a year annual payments. Appellants also appeal from the portion of the decree directing payment of a portion of accumulated income.

The antenuptial agreement which was signed by the parties is as follows:

"This agreement made this 19th day of November, 1917, by and between John B. Corliss and Dorothy Montgomery, both of Detroit, Michigan.

"Whereas a marriage has been agreed upon and is intended to be duly had and solemnized between the parties hereto, and

"Whereas said John B. Corliss, has an invalid son, an aunt who has cared for his children from infancy, and a sister dependent upon him for their care and support, and

"Whereas said John B. Corliss is possessed of lands and property deemed ample for the care and support of his family and provide a suitable revenue for the maintenance of said Dorothy Montgomery in case she shall survive him, and desires to make pro-vision therefor, and

"Whereas the parties hereto for the mutual pro-tection of themselves, their heirs and said depend-ents, have agreed that in lieu of dower and other

lawful interests, which shall or may vest in said Dorothy Montgomery by reason of her marriage with said John B. Corliss, to accept a definite allowance with the use of the home or homes of the parties hereto, at the death of the said John B. Corliss, for and during the natural life of the said Montgomery.

"Now, therefore, it is hereby mutually agreed by and between the parties hereto, for and in consideration of the sum of $1 in hand paid, and the further consideration of the marriage of the parties hereto to be solemnized, that in case the said Montgomery shall survive said Corliss as his wife or widow, she shall accept in lieu of dower interests the use for life of the home or homes, free from taxes accruing from year to year, together with all furniture and equipment of the parties hereto at the death of said Corliss with an allowance of $5,000 per annum to be paid quarter annually, from the interest and revenues of the property of the said Corliss, together with the taxes that may accrue on said homes, all taxes accruing upon said homes to be assumed and paid from the estate of the said Corliss so as to insure the free use thereof.

"The said Montgomery does hereby agree and for the consideration hereinbefore expressed, waive and agrees to waive all her rights of dower which shall or may vest in her by reason of her marriage with the said Corliss, or as his wife or widow, in and to all of the lands, property and effects of said Corliss now held or hereafter acquired, and said Montgomery does hereby promise and agree that she will at the request of said Corliss at any and all times as he may desire, execute jointly with him, any and all deeds of conveyance of any lands now owned or hereafter owned by him, so that such deeds when executed and recorded shall show a perfect record title.

"The said Corliss hereby expressly agrees to make lawful provision for the use of the said homes (free from taxes) together with furniture and equipment and the payment of said allowance to said Montgomery during her life, from the revenues of his

property, and to cover the same by will, or set aside in trust sufficient property to insure the revenue to cover said allowance and the payment thereof to said Dorothy Montgomery as his widow.

"It is further expressly understood and agreed that subject to the fulfillment of the provisions of this agreement, all the property and effects of the respective parties hereto now held or hereafter acquired, shall at their death respectively, descend to their respective heirs or devisees."

The portions of the will important for our consideration are as follows:

"After the payment of my just debts, I give, devise and bequeath my property, both real, personal, and mixed, as follows:  *  *  *

"Second: In lieu of the existing antenuptial agreement between myself and my beloved wife, Dorothy M. Corliss, I give, devise and bequeath to her during her life an annual income of $7,200 from my estate to be paid in monthly instalments during her life.

"I also give and devise to her the furniture and the best automobile owned by me at the time of my decease with the privilege of occupying our home at 70 Longfellow, Detroit, Michigan, if desired, for a year after my decease.  *  *  *

"Fifth:  *  *  *  It is my intention during my life to set aside and deposit in escrow securities or funds to the amount of $50,000 to be held and the income derived therefrom shall be used for the care and education of my beloved granddaughter, Elizabeth Danforth Corliss, daughter of my beloved son, Cullen Danforth Corliss, said fund to be held in trust until said granddaughter shall reach the age of 21 years when the same should be paid to her if then living but in case of her decease before she reaches the age of 21 leaving no issue, said funds shall revert to my estate, otherwise not. In case said fund has not been by me set aside during my lifetime, I direct that from the assets of my estate said fund shall be created and deposited with a re-

liable security or trust company to be held and managed under the supervision and direction of my executor and trustee and the income therefrom used from year to year for the care and education of said granddaughter.

"Sixth: I desire that my son, John B. Corliss, Jr., assume the burden and labor necessary to keep accounts and to attend to all the details and labor necessary for the administration and distribution of my estate in accordance with the terms of this my will, subject to the approval of my executor and trustee herein named, it being my wish that he attend to the work so as to relieve my executor and trustee of the detailed service necessary to administer the estate, subject, however, to the judgment, supervision and direction of my executor and trustee and in case he performs such service to the satisfaction of my said executor and trustee, I desire that he be paid a salary of $200 per month so long as he shall perform such service to the satisfaction of my said executor and trustee. In case my said son shall require funds to protect his real estate investments, I direct that my executor and trustee advance from funds of my estate sufficient to protect his real estate investments the same to be finally charged against his share of my estate.

"Seventh: I hereby authorize and empower my executor and trustee hereinafter named with full authority to handle and control the property of my estate of every name and nature for the purpose of carrying out my wishes and bequests, and to that end I hereby grant unto him full power to sell and lawfully convey by deed any property, lease, interest or effects held by me at the time of my death, excepting and reserving the properties set forth in paragraph one for the purposes herein mentioned and to hold or invest the same for the benefit of my estate and should  *  *  *  [he] conclude at any time that the financial condition of the estate will permit, a distribution of part of the property of the estate may be made as herein and hereby provided.

"Eighth: After the fulfillment of all of the provisions of my will and the payment of the bequests or creation of a fund to insure the payment thereof during the lives of the respective legatees, then I give, devise and bequeath all the rest and residue of my estate, of every name and nature, unto my three children, John B. Corliss, Jr., Elizabeth Corliss Holley and Margery Corliss Holley, respectively, in equal proportions, share and share alike, and to their heirs."

The widow elected not to take under the will and stands on the antenuptial agreement. Appellants, the two daughters, who are now sole residuary devisees and legatees, claim that recourse may not be had to the principal of the estate, to make up the annual payment of $5,000 provided in the antenuptial agreement.

One paragraph of the antenuptial agreement speaks of "an allowance of $5,000 per annum to be paid quarter annually, from the interest and revenues of the property of the said Corliss," and appellants infer therefrom that the $5,000 annual allowance is to be derived from income only.

However, a later paragraph of the agreement recites that deceased was to make lawful provision for the use of the homes (free from taxes) and payment of said allowance "from the revenues of his property, and to cover the same by will, *or set aside in trust sufficient property to insure the revenue to cover said allowance,*" et cetera. (Italics supplied.)

The will made provision in lieu of the antenuptial agreement, but did not provide for the tax-free use of the home. This was not a compliance with the undertaking in the antenuptial agreement. The election by the widow not to take under the will left the antenuptial agreement in full force and its provisions available to the widow, with the provisions of the antenuptial agreement taking priority over all the bequests and devises in the will.

The trial court ruled that recourse should be had to the principal, if necessary, to make up deficiency of annual income to provide the annual allowance of $5,000 to the widow, which ruling we affirm.

As to the trust fund of $50,000 for the granddaughter, provided in the will, it has been impossible to set aside such fund during the 17 or 18 years since the will was admitted to probate in December, 1929. If the $50,000 fund had been set aside at the time designated in the will, the result necessarily would have been to decrease the principal of the estate. Even without such decrease, the income of the estate has not at all times been surely sufficient to provide the annual payment to the widow and, therefore, the annual payments to her out of the income would have been jeopardized by the setting aside of the fund. The granddaughter's brief indicates it is highly probable that future income will fall short of the annuity requirement.

Annual accounts of the administrator w.w.a. have been allowed in probate court without objection and without appeal, showing among other things payment of $5,670 to the granddaughter, and payments of $200 per month made to John B. Corliss, Jr., until his death without heirs in 1945, a total of $37,000 to him.

While the widow, as a creditor under the antenuptial agreement, could complain of the payments to the son being treated as administration expenses, yet as to the devisees and legatees whose only claim to an interest in the estate comes through the will, the payments are administration expenses and are treated by us as such. The administrator had no right under the will to make the payments excepting as for services. None of the parties concerned complained of the payments or appealed from the orders of the probate court approving the payments.

The decree appealed from authorized the administrator to hold the administration of the estate open

so long as the widow shall live or in lieu thereof, to pay the widow sufficient cash to enable her to purchase an annuity contract or contracts in partial or full satisfaction of her annuity claim against the estate. There was testimony to show that $57,053 would be required for full satisfaction.

The decree appealed from also determined that the granddaughter, who attained the age of 21 on October 10, 1941, is entitled (after debiting her with $5,670 already paid her) to an aggregate of $83,-454.81, which is the $50,000, the amount of the trust fund, plus $33,454.81, the remainder of the accumulated net income, and that the granddaughter is entitled to that sum, $83,454.81, before any payment is made to residuary legatees.

The worth of the estate was $108,682.28, as of October 31, 1947, which was about three weeks before the conclusion of the hearing in the court below.

It is apparent that if cash were provided to purchase the annuity for the widow and if the provision in the decree for the granddaughter were sustained, the residuary legatees would receive nothing.

Appellants complain of the provision for purchase of an annuity and of the computation of amount due the granddaughter.

The parties have not appealed from that portion of the decree authorizing the estate to be held open so long as the widow shall live and her annual payments of $5,000 shall not have been settled for.

It seems not to be disputed in this case but that if no harm resulted to any bequest thereby, the court might well authorize the administrator to furnish the cash for purchase by the widow of an annuity and thus the administrator would be able to close up the estate. But the daughters, the residuary devisees and legatees, have a right to the results that will accrue to them by handling the estate along the lines laid out in the will. The will does not contem-

plate the purchase of an annuity for the widow. The testator was not bound under the antenuptial contract to purchase an annuity but bound his estate to pay annually the sum agreed on, $5,000 (plus taxes on the homestead). The antenuptial agreement and the wording of the will both clearly show that the $5,000 annual payment to the widow was to be paid primarily out of income. It is only when and to the extent that the annual income is insufficient that recourse may be had to the principal. The decree appealed from on the contrary authorizes and would require the taking of a large portion of the principal of the estate, over and above income, to purchase the annuity contract. Such decree is contrary to the expressed purposes of the antenuptial agreement and of the will, and being destructive of the interests of the residuary legatees, cannot be allowed to stand.

The real estate of deceased, in recent years at least, appears to have increased in value. There is a likelihood that if the principal is maintained intact or as nearly intact as possible, the income of the estate will furnish most of the annual payments required for the widow and the residuary legatees will have a fair prospect of receiving at least something from their legacy.

The residuary legatees have a right to be consulted as to purchase of the annuity contract. See *Bridgeport Trust Co.* v. *Fowler,* 102 Conn. 318 (128 Atl. 719), cited in the granddaughter's brief.

Under the circumstances of the estate and in view of the provisions of the will and antenuptial agreement, we reverse that part of the decree which provides for the purchase of an annuity for the widow.

The deceased by the antenuptial agreement charged the *income* of *all* his estate with the burden of providing the $5,000 annual payments to the widow. As to that portion of the income of his estate which he had thus disposed of by the agree-

ment, the will is wholly inapplicable. That portion of the estate which would be required to provide the $50,000 for the trust of the granddaughter was required to and is liable to furnish its proportion of income from which the widow's annual "allowance" shall be paid.

As to the future handling of the estate, it is to be understood that after the payment of expenses of administration, and after the payments of the annual allowance to the widow up to the time of her death, the trust fund capital sum of $50,000 shall be first payable to the granddaughter together with such portion of the remaining net income, if any, to the granddaughter, as $50,000 is proportionate to the average value of the principal of the estate during the income-producing period.

As compensation to the granddaughter in full to October 31, 1947, for the estate's inability and failure to set up the trust fund, of the $33,454.81 net income on hand, October 31, 1947, she is entitled to $11,785.13 as her proportionate share, subject to a deduction therefrom of $5,670 already paid her, on condition however that the widow and residuary legatees all consent in writing, since we consider that there will not thereby be created a probable jeopardy to the future ability of the estate to produce payments of the widow's allowances out of income only, in view of the fact that there will be $21,669.68 accumulated net income left from which future deficiencies of annual income can be met.

Except as to such portions of the decree appealed from as are herein reversed, the decree is affirmed.

A decree may be entered in this Court in accordance with this opinion. No costs, as no party has completely prevailed.

SHARPE, C. J., and BUSHNELL, BOYLES, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.