GIST BLAIR et al., Trustees, In Equity *vs.* WOODBURY BLAIR et als.

Cumberland.    Opinion May 1, 1923.

*The net income of a trust estate goes to the persons designated in the will, the distribution thereof being deferred by the occurrence of certain events as provided in the will, and no part thereof becomes a part of the principal.   If any part of said income is used in carrying out the provisions of the will, such part so used is to be restored from the principal to the income, at the time such income becomes distributable under the terms of the will.*

In this case the Trustees are advised:

First.    That the persons designated in said will as entitled to the entire net income of said trust estate are entitled to the income thereof accruing from the date of the death of the testatrix, distributable to them from and after the date of the completion of said memorial building or the expiration of five years from the date of the death of the testatrix, whichever event occurs the earlier, until the expiration of said trust; and that the portion of the net income of the trust estate which accrues prior to the completion of the memorial building, or before the expiration of five years from the death of testatrix, whichever event occurs the earlier, does not become a part of the principal of said trust fund.

Second.    That the Trustees are authorized by fair implication from the language of the will, for the purpose of erecting said memorial building, temporarily to use the net income of said estate accruing since the date of the death of said testatrix so far as, in their judgment, may be necessary for that purpose; but in view of the amount of available resources in the hands of the trustees, the court does not perceive any existing or probable necessity for so using the income of the trust estate.

Third. That, if in the judgment of the Trustees it becomes necessary to use any portion of the net income of the trust estate for the purpose of erecting said memorial building and any net income is so used, they are authorized and directed to take from the principal of said trust estate, when said income becomes distributable under the terms of said will, a sufficient portion to restore to the fund accruing prior to such distribution as income to be distributed, such sums as have been appropriated by said trustees for the erection of said memorial building.

On report. This is a bill in equity seeking instructions from the court as to the duties of the complainants as trustees under the will of Mary J. E. Clapp, late of Portland, deceased. The questions involved related to the use of the income of the trust created under Article 12 of the will, and what portion, if any, of said income might be used by the trustees for the erection of the Memorial Building mentioned in said article. At the conclusion of the evidence, by agreement of the parties, the case was reported to the Law Court upon bill, answers, replication and evidence. Bill sustained.

The case is fully stated in the opinion.

*Bradley, Linnell & Jones,* for complainants.

*Clinton C. Palmer, Arthur D. Welch, Verrill, Hale, Booth & Ives, John H. Pierce and Roger V. Snow,* for respondents.

SITTING: CORNISH, C. J., SPEAR, PHILBROOK, DUNN, MORRILL, DEASY, JJ.

MORRILL, J. Mary J. E. Clapp, the last surviving lineal descendant of a family resident in Portland for several generations, died on the ninth day of September, 1920. She left a will, with four codicils, later duly proved and allowed, of which the plaintiffs were executors; the plaintiffs were also named as trustees under said will; they duly qualified, and letters of trust were issued to them on the thirteenth day of July, 1921. They settled their accounts as executors, and delivered to themselves as trustees the balance of personalty in their hands as such executors on December 1, 1921. They received as executors income of the estate to the amount of $11,588.40; as trustees they have received income on real estate from the death of the testatrix, and on personal property from said December 1, 1921, to August 24, 1922, the date when this bill was filed, to the amount of $76,491.46.

As trustees, the plaintiffs bring this bill asking for instructions as to the disposal of this income after deducting charges, and net income accruing since the filing of the bill.

After making pecuniary bequests, providing several annuities, distributing numerous articles of personal property in the nature of family portraits, heirlooms, silver, furniture, and articles of similar kind, and expressly ensuring perpetual care for the family tombs and burial lots, Miss Clapp by the twelfth article of her will bequeathed and devised to trustees the residue of her estate, in trust, "to hold, invest and re-invest the same and to apply the net income thereof as herein set out."

Then follow carefully framed provisions for the administration of the trust, conferring powers of sale, lease or other disposition of the property, both real and personal, protecting the trustees against loss except by wilful default, perpetuating the trusteeship by providing the manner of filling vacancies, and for managing the trust estate while any vacancy exists.

The will then provides, in the fourth paragraph of Article 12:

"The entire net income of the trust, except as otherwise provided in this my last will and testament, shall annually, or oftener, at the discretion of said Trustees, be paid over to or applied for the benefit of the descendants of my grandfather, Asa Clapp, and my grandmother, Elizabeth W. Q. Clapp, hereinbefore in the Eighth Article of this will enumerated, during the period of the entire natural life of the last survivor of such descendants living at my decease as are then or may thereafter become entitled to share in said net income, and during the additional period of twenty one (21) years and after the death of such last survivor. At the expiration of said Twenty-one (21) years all the principal, residue and remainder of the trust fund shall be transferred, conveyed and distributed to and among such of the aforesaid descendants of my said grandfather and grandmother as may then survive, as tenants in common, to hold to them, their heirs and assigns forever, each of said descendants taking the same share of such principal, residue and remainder as according to the provisions hereof he or she is at the time entitled to receive of the income aforesaid. Such net income shall be paid over to or applied for the benefit of the aforesaid descendants in the following proportions, namely: In equal shares to such of the grandchildren of my said grandfather and grandmother, that is to such nephews and

nieces of my father, descendants as aforesaid of my said grandfather and grandmother, as may at the time and from time to time be living, and to the issue at the time and from time to time living of any such nephew or niece who have deceased before me, or may thereafter decease, such issue taking per stirpes, to each for and during his or her natural life, provided that, except as otherwise expressly directed at all times and from time to time, the issue of any such deceased nephew or niece shall receive as tenants in common the same share per stirpes which at the same time would be received by said nephew or niece if living. In all respects the principle of survivorship shall govern, so that at no time shall any part of the said net income be undevised estate."

A portion of the real estate of the testatrix was the homestead of her father and grandfather situated on the easterly corner of Congress and Elm Streets, in Portland; this "entire lot" she directs shall "be retained by my Trustees during the entire period herein designated for the continuance of the trust aforesaid, and during that period no portion thereof be sold or otherwise disposed of except by ordinary and customary leases. The net rents thereof and of whatever buildings may be thereon shall be taken as a part of the net income of the trust aforesaid, and such lot and buildings thereon shall be held as parts of the principal of such trust, subject to the special provisions herein concerning the same."

She recurs to this subject in the following language:

"It is my wish and will, and I direct, that no part of my said homestead lot shall pass to any other person or corporation or be used in any other manner than as provided in this my last will and testament said lot having been retained by me unincumbered since the decease of my honored father for the purposes in this will set out, and for no other."

The purposes to which she devotes the family homestead are thus described:

"I direct that said Trustees shall forthwith after my decease commence thereon, proceed with and complete a handsome, imposing and substantial block facing Congress Street, which shall be in memory of my honored father and my grandfather, Asa Clapp, and shall be especially adapted for occupancy by stores, offices and halls. Inasmuch as the same is to be a memorial block, the Trustees are not to sacrifice to economy or the production of large net income, its

architectual character or its complete suitableness to the central and prominent locality which it will occupy, and the Trustees are to bear always in mind that my special desire and directions are that they shall erect and maintain in the best of condition and rebuild in case of destruction this building on said lot thus occupied by my father and grandfather as their homestead as a fitting reminder to the citizens of Portland of them as residents of that City and of their life-long interest in its welfare. At a suitable point on the front of said block there shall be cut in granite or some other enduring substance the name of my grandfather, in fac-simile of his handwriting, as follows: "Asa Clapp," and underneath it that of my father, in fac-simile of his handwriting, as follows: "Asa W. H. Clapp." Said Trustees shall use for the purposes of erecting said block any and all such other portions of my real estate and personal estate as far as desired to accomplish my purposes herein set out, and no portion of my real estate or personal estate or of the net income thereof shall be distributed or paid out in legacies until said block is completed, except as herein otherwise directed, but this clause shall not delay such distribution or payment for more than five (5) years from my decease."

She recommends, further, that the construction of said improvements shall cost not less than three hundred thousand dollars, exclusive of the value of any material taken from the homestead buildings.

It is the provision quoted above, for withholding payments of income to beneficiaries during the construction of the block, which furnishes the occasion for bringing this suit. In a previous clause the testatrix had provided that this provision withholding payments of income should not apply to specific legacies, pecuniary legacies, the payment of annuities, or to expenditures required for maintaining the family tombs as she desired. The provision concerns only the persons designated by name as descendants of her grandfather and grandmother, and their descendants. Of the eight beneficiaries designated by name, one has died without children surviving her, and one is disqualified under other provisions of the will not necessary to be recited; the remaining six, one of whom is a Trustee, whom we will designate as Life Tenants, are in accord as to the construction of the will; ten adult children of the Life Tenants are made parties and have answered the bill; these are in accord with the Life Tenants, except three adult children of George Gardiner Fry, one of the Life

Tenants; ten minor children and grandchildren of the Life Tenants, four of whom have been born since the death of the testatrix and prior to the filing of the bill, are made parties and have made answer by guardians ad litem; the answers of four of these minors, grandchildren of George Gardiner Fry, are in accord with the contention of their parents, children of said George Gardiner Fry; the answers of the remaining minors admit the allegations of the bill, and join with plaintiffs in the prayer for the construction of the will and codicils.

The controversy which justifies the filing of this bill by the trustees for instructions as to the execution of the trust, is thus between the Life Tenants and the children of George Gardiner Fry.

The former contend that they are entitled to the net income of the trust estate, to be computed from the death of the testatrix, and that the clause directing that "no portion of my real estate or personal estate or of the net income thereof shall be distributed or paid out in legacies until said block is completed" only postpones the time of payment.

The latter contend, as stated in the brief of counsel for the adult defendants, "that any portion of the net income of said estate which accrues prior to the completion of the Memorial Building or before the expiration of five years from the death of testatrix, whichever event occurs the earlier, was intended by said testatrix to become a part of and should become a part of the principal of said trust fund, distributable as provided in said instrument among those persons designated by the testatrix as entitled thereto at the completion and expiration of said trust," and "Second: That if not so held as principal and distributed at the expiration of the trust herein created, said fund should be used by the trustees hereunder to help defray the cost of erection of the Memorial Building referred to; that the trustees are fully authorized to so apply the net income of the estate and under the terms and purposes of those instruments are in duty bound to do and that any income so used by them and put into this Memorial Block is transferred permanently into the principal of said trust estate without right of being restored later to the use of income beneficiaries."

Being in doubt as to their authority and duty relative to the distribution of said net income, to the application of said net income to the construction of said building, and to the restoration of such

portion of said income as is so used, by the application of principal of said trust fund for that purpose, the trustees ask for instructions from the court upon those points.·.

First.   As to the distribution of the net income, the trustees are advised that the persons designated in said will as entitled to the entire net income of said trust estate are entitled to the income thereof accruing from the date of the death of the testatrix, distributable to them from and after the date of the completion of said memorial building or the expiration of five years from the date of the death of the testatrix, whichever event occurs the earlier, until the expiration of said trust; and that the portion of the net income of the trust estate which accrues prior to the completion of the memorial building, or before the expiration of five years from the death of testatrix, whichever event occurs the earlier, does not become a part of the principal of said trust fund. ·

This will is most carefully drawn and is very explicit in making clear the intentions of the testatrix as to the trust estate.   In creating the trust in the first paragraph of the Twelfth Article of the will, the testatrix directed the trustees "to apply the net income thereof as herein set out"; searching further for directions as to the application of the net income, we find them in the fourth paragraph as follows:

"The entire net income of the trust, except as otherwise provided in this my last will and testament, shall annually, or oftener, at the discretion of said Trustees, be paid over to or applied for the benefit of the descendants of my grandfather and grandmother."

Disregarding for the time being the exception, language cannot be found to express more definitely a gift of the entire income to the descendants whom she had so carefully designated.   Having regard to the position of the excepting clause, immediately following the subject with which the sentence deals—"the entire net income of the trust"— it is clear that the exception is from the "entire net income" and refers to other provisions expressly creating charges against income, viz.: the annuities and the preservation and care of the family tombs and lots, which latter she had expressly reminded the trustees "are to me the dearest and most important of all matters for which I can provide by will."   The exception cannot relate to time of payment; that is qualified by the clause, "at the discretion of said Trustees."

The constantly recurring phrases of the will are consistent only with the idea that the Life Tenants and their descendants received a gift of the entire net income of the trust subject to the payment of the annuities and the maintenance of the family tombs and lots, . . . "No other person whomsoever shall ever receive any portion of said income or trust estate, except as otherwise expressly provided in this will." Payment is to be made "during the period of the entire natural life of the last survivor of such descendants living at my decease." In providing for payment to issue of any such nephew or niece who might die before or after the testatrix, such issue is to take "per stirpes, to each for and during his or her natural life." . . "At no time shall any part of the said income be undevised estate." . . . "No portion of any of said income shall so long as this trust exists be paid to any person except the beneficiaries aforesaid entitled thereto."

The provisions of the will also make clear that the "entire net income," to which the Life Tenants are entitled, includes the income from the death of the testatrix. This is in accordance with the general rule as recognized in this State. *Weld* v. *Putnam*, 70 Maine, 209. *Union Safe Deposit Co.* v. *Dudley*, 104 Maine, 297, 312. *Doherty* v. *Grady*, 105 Maine, 36. There is no contrary intent shown by the will. Throughout the will there is careful discrimination between principal and income. In the last paragraph of the Eighth Article the testatrix speaks of those "to whom or for whose benefit the net income of the trust in this will provided is to be paid or applied," and those "among whom the trust estate is to be distributed at the expiration of the trust." Throughout the provisions for the creation and management of the trust and the application of income, there is no indication of an intent that any portion of the income shall be regarded as principal; the two funds, principal and income, are always kept distinct. In the fourth paragraph of Article Twelve, before quoted, she provides for the transfer, conveyance and distribution of the principal of the trust fund to and among such of said descendants as may then survive as tenants in common, and, in another sentence, for the distribution of the net income from time to time; thus clearly indicating the existence of the two funds. And when the testatrix gave her express directions to the trustees that the homestead lot should be retained during the entire period designated for the continuance of the trust and that during that period no portion

of said homestead should be sold, she expressly recognized the segregation of principal from income, and provided that the net rents of the homestead shall be taken as a part of the net income of the trust, and the homestead lot and buildings thereon shall be parts of the principal of the trust. The will speaks from the death of the testatrix and contemplates the existence of the trust as beginning at that time. To fix a later date for the beginning of the fund of income, and to permit the income to accumulate as a part of the principal for any period subsequent to the death of the testatrix would take away income from the tenant for life and apply it to the increase of capital for the benefit of those who may be entitled to share in the principal of the fund. *Sargent* v. *Sargent*, 103 Mass., 299. *Minot* v. *Amory*, 2 Cush., 380 et seq.

The contention of those defendants who are opposed to the Life Tenants is based upon the last sentence of the directions, above quoted, for the erection of the block, beginning with the words, "Said Trustees shall use for the purposes of erecting said block," etc. This sentence does not impose upon the trustees the duty of using income for that purpose, nor does it expressly authorize the conversion of income into principal by such use; the trustees are commanded to use the real and personal estate for that purpose, but there is no command as to income except that distribution thereof shall be postponed. Nor is there any language from which an intention that income accruing prior to the completion of the building, or before the expiration of five years from the death of testatrix, whichever event occurs the earlier, shall become a part of the principal of the fund can be inferred. Such intention cannot be predicated upon the use of the word "delay"; delay means to postpone, to defer. Standard Dictionary. If the intention of the testatrix had been as contended, she could easily have said that income earned previous to the completion of the building should be principal, and that the income available for distribution should be that which would accrue after completion of the building or after the expiration of five years from her death, whichever event should occur the earlier. We have no doubt, viewing the great care bestowed upon the phraseology of her will, that she would clearly have expressed her wishes, if such had been her intention, leaving nothing to inference or implication.

Having in mind her long cherished purposes as to her estate, and the amount and character of her property available therefor, which

she must have known, it is not difficult to understand her motive in withholding distribution of income until completion of the memorial building.

We learn from some of the answers and from briefs of counsel that the property which came into the hands of the trustees consisted of

| | |
|---|---|
| Real Estate valued at | $782,663.00 |
| Personal Estate valued at | 73,767.33 |

Of the appraised value of the real estate, $600,000 represents the value of the homestead and the "Clapp Block," so called, on the opposite corner of Congress and Elm Streets; the latter property the testatrix directed should not be sold in order to raise the necessary funds for the construction of the memorial block "unless such sale is absolutely necessary in the judgment of my said Trustees." Thus the property available for the construction of the block at a cost of $300,000, was real estate valued at $182,633.00 and personal estate, $73,767.33.

Realizing the difficulty of financing the construction of the block upon such resources, Miss Clapp devised the plan of withholding payment of income and thus creating an emergency fund in the nature of working capital which might temporarily be used to defray expenses of construction pending sale of real estate, and be made good . from proceeds of real estate which the trustees were expressly directed to sell. With good judgment the trustees have avoided this embarrassment by negotiating a loan of $300,000 secured by mortgage upon the Clapp Block, authorized by a decree in equity of a Justice of this court. One of the counsel questions the binding force upon his clients of the proceedings authorizing this loan and mortgage. We are not concerned with that question here; we only recognize the fact that to defray cost of construction of the memorial block at an estimated cost of $323,700, the trustees have available $300,000, proceeds of a mortgage loan, $73,767.33, personal property available as cash, in addition to real estate of an appraised value of $182,633.00 which they are directed to sell.

The foregoing discussion furnishes brief answers to the remaining requests for instructions.

Second. The trustees are advised that they are authorized by fair implication from the language of the will, for the purpose of erecting

said memorial building, temporarily to use the net income of said estate accruing since the date of the death of said testatrix so far as, in their judgment, may be necessary for that purpose; but in view of the amount of available resources in the hands of the trustees, the court does not perceive any existing or probable necessity for so using the income of the trust estate.

Third. The trustees are advised that, if in their judgment it becomes necessary to use any portion of the net income of the trust estate for the purpose of erecting said memorial building, and any net income is so used, they are authorized and directed to take from the principal of said trust estate, when said income becomes distributable under the terms of said will, a sufficient portion to restore to the fund accruing prior to such distribution as income to be distributed, such sums as have been appropriated by said trustees for the erection of said memorial building.

> *Bill sustained. Decree in accordance with this opinion. The plaintiffs may charge their taxable costs against the income in their hands. The sum of $2,500 is allowed for counsel fees, to be charged against income, and distributed by the trustees among counsel as may be agreed.*