# Grainger's Ex'rs and Trustees v. Pennebaker et al.

(Decided Dec. 16, 1932.)

(As Extended on Denial of Rehearing March 7, 1933.)

BRUCE & BULLITT, WM. MARSHALL BULLITT, and LEO T. WOLFORD for appellants.

DAVID R. CASTLEMAN for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

The Fidelity & Columbia Trust Company and the Liberty Bank & Trust Company were named executors and trustees in the will of Jeannie M. Grainger. The will was probated by the county court of Jefferson county. They were by its order appointed and qualified as executors and trustees of her will; they assumed the control and possession of her estate, immediately paid all of the debts of the testatrix, and, within nine months after the date of her death, paid the inheritance taxes on the estate and the interest of the several beneficiaries under the will, to the commonwealth of Kentucky, the federal taxes to the United States, and certain specific pecuniary legacies which they were directed

to pay by clauses 2 and 3. The nature and value of the estate are not disclosed by the record, except inferentially. There has accumulated interest or income on the estate, and now in their possession, $10,000. By the first clause of the will, the testatrix directed the payment of her debts and funeral expenses. Clause 2 devised $20,000 to Mary J. Ferguson. Clause 3 bequeathed $20,000 to Elizabeth B. Henderson. Clause 3 also directed the executors and trustees to set aside out of the residue of the estate, mentioned in clause 8, a sufficient amount of first-class securities owned by her at the time of her death, or a sufficient sum of money which, when invested in first-class securities, will net an income of $100 per month, and that this $100 be paid monthly to Elizabeth B. Henderson, for and during her natural life. Clause 4 devised to the executors and trustees in trust, first-class securities owned by her at the time of her death, of the value of $75,000, or in lieu thereof the sum of $75,000 be invested in such securities and held by them in trust for her, and the net income therefrom paid to Mrs. Jane G. Wilhite for and during her natural life; the income from this trust, paid to her either quarterly or semiannually or annually as she may elect, to be used by her as she may desire. The eighth clause devised "all the rest, residue and remainder" of her estate, real, personal, mixed, and wherever situated, to the executors and trustees, to be held by them in trust for Jane Grainger Pennebaker, for and during her natural life; the net income therefrom be paid to her.

The executors and trustees filed this action to obtain a declaratory judgment on the questions we shall hereafter consider.

The circuit court decreed that the $100 per month devised to Elizabeth B. Henderson and the net income from the $75,000 devised to Jane G. Wilhite were specific pecuniary legacies within the meaning of section 2065, Ky. Stats., and only the income accruing one year after the death of the testatrix was to be paid to them; that Jane Grainger Pennebaker, as life beneficiary under clause 8 of the will, was entitled to all of the income received after testatrix' death, from every source, during the administration of the estate, including the income from property subsequently used by the executors for the payment of debts, legacies, and similar charges; and that such income did not become a part

of the corpus of the residuary estate. It was further decreed that the costs of administration, including ad valorem taxes, and the fees of the executors and attorney, should be paid out of the corpus of the estate and not out of the income, adjudged to Jane G. Pennebaker, the beneficiary for life of the residuary estate. As to the inheritance taxes, the court applied subsection 5 of the section 4281a-7 and required the same to be paid out of the corpus of the trust estate, i. e. that the inheritance taxes against the life interest of Jane G. Wilhite should be paid out of the corpus of the trust estate directed by the will to be set up and held for her, and not out of the income therefrom, and the inheritance taxes against the life interest of Jane Grainger Pennebaker, and the remainder interest, after her life estates in the trust, should be paid out of the corpus of the trust and not out of the income arising therefrom. As to the $100 per month for the life of Elizabeth B. Henderson, all inheritance taxes and other taxes (except income taxes) and costs of administration should be paid out of the residuary estate.

We shall first consider and dispose of the right of the life tenants to the income accruing, and received by the executors during the period of administration, and before the end of the year after the death of the testatrix. This is not an action by the legatees to require the executors to pay over to them, before the expiration of one year following their qualification, specific pecuniary legacies, or to account to them for interest thereon before the expiration of one year after the testatrix' death. Section 2065, which guided the circuit court in his conclusions, was intended to protect an executor against the payment of specific pecuniary legacies and interest thereon, before the expiration of one year after the testator's death. It was not intended to, and does not, determine the right of a devisee for life to the income arising out of the trust set aside for his benefit or that of a life tenant to the income on the residue or that of the residuary legatee, to the income on the residue, from the date of the testator's death. It was not intended and it does not operate to deprive the devisee of the life estate of the income arising from a trust fund directed by the will to be set apart and held in a trust fund for him, during the time of administration, or after the death of the

testator. It does not deprive such devisee of the income therefrom for one year, or any time after the death of the testator, and thereby convert it into the corpus of the residuary estate, or into income for the use of the life tenant of the residue or remainder. It does not deal with the question whether the one or the other of such legatees shall be the beneficiary of the income of distinct trusts during the period of administration, or for one year after the death of the testator. The statute, as well as the common law (Harlan's Trustee v. Harlan, 228 Ky. 73, 14 S. W. (2d) 397), proceeds on the presumption that one year is a reasonable time in which an executor may ascertain the condition of the estate and administer it. Its purpose is to protect the executor during that period. Both the common law and the statute deal with a situation where no interest or income accrues during the period of administration, and from the very nature of the estate, the interest or income, if any, is paid to the life tenant of a trust or the life beneficiary of the residue is required to be paid out of the corpus of the estate, and where no interest or income is produced by the trust fund during the period of administration.

Neither section 2065 of the Statutes, nor the common law, has the effect of annulling the general rule that where the corpus, or some aliquot part thereof, is directed by the will to be held in trust for the benefit of a devisee for life, the corpus to another, after the life tenant's death, the life tenant is entitled to the interest or income from the date of the testator's death, unless otherwise provided in the will. That is, the earnings—the interest, or income of a trust earned by the distinct trust fund—between the death of the testator and the end of the year recognized by the common law and the Statutes as a reasonable time for the purpose of the administration of the estate, do not go to swell the income of the life beneficiary of the residuary estate, nor to enlarge the corpus, but pass under the will to the life tenant. The fundamental reason of the rule is the presumption that, in the absence of an expressed intention to be gathered from the language of the testator's will to the contrary, the life tenant ranked first in the consideration of the testator at the time of the writing of his will, else he would not have created the trust and directed the income therefrom

paid to the life tenant. To deprive the life tenant of the income, or interest arising from the particular fund, placed especially by the will in trust for his use and benefit, during the period recognized by the law for the purpose of the administration of the estate by an arbitrary rule of construction, without the expressed language of the testator so directing, operates in effect to build up the corpus or the income of the life tenant thereof. Such in effect is a diversion, without authority of the will of the testator, of the interest or income arising from such trust fund, at the expense of the life tenant, for the use and benefit of the devisee of the residuary estate, or the devisee of the income therefrom, who were second in the mind of the testator at the time of the writing of his will. If the trust fund is non-interest bearing, or non-income producing, during the period of administration, or for one year after the death of the testator, the payment to the life tenant of interest or income during such period, out of the corpus, is equivalent to converting to that extent, and for that purpose, the corpus for the benefit of the life tenant at the expense of the residuary legatee, or the life tenant of the residue. There is a patent distinction between paying out of the corpus a specific pecuniary legacy or the interest thereon, during the period of administration, and the paying during the same period, to a life tenant the income produced by certain first-class securities set up by the executor as a definite special trust for the benefit of such life tenant, in accordance with the expressed provisions of the will of a testator. The first is controlled by section 2065 of our Statutes; the latter by the compulsive intent of the testator, ascertained from the language of the entire instrument.

The fact the interest or income (if it is earned by the specific trust fund, directed to be set up and held in trust for the life tenant) is not collected during the statutory period of administration, or does not become due and payable until after the close of the period of administration or the ascertainment of the residue, on account of the delay in probate proceedings, or because of the lack of attention, or the negligence, or caprice, of the executor, should not be allowed to operate to convert the interest or income, arising out of such trust fund, during the period of administration, into the

corpus of the estate, or into income of the life beneficiary of the residuary estate, and thus deprive the life tenant thereof permanently, not because of the will of the testator, but because of the action, or nonaction, of the executor. The necessities of justice, and the fair execution of the will of a testator, under such circumstances, demand that the question of the right of the life tenant to such interest or income be considered one of postponement of its enjoyment and not as a reason for treating it as an accretion of the corpus of the estate, or income thereof for the life beneficiary. The question under review is one of first impression in this jurisdiction. However, our pronouncement herein is the prevailing rule, supported by a practical unanimity of the text-writers and the courts of other jurisdictions. See 28 R. C. L. 355; Worner's American Law of Administration (3d Ed.) secs. 454, 458; Loring's Trustees, p. 172; Perry on Trusts (6th Ed.) vol. 2, sec. 550; Thomas on Estates, p. 1517; Underhill on Trusts, p. 273 et seq.; Flint on Trusts, sec. 203; Hill on Trusts, secs. 388-390; In re Leitsch's Will, 185 Wis. 257, 201 N. W. 284, 37 A. L. R. 547; Creed v. Connelly, 272 Mass. 241, 172 N. E. 106; Poole v. Union Trust Co., 191 Mich. 162, 157 N. W. 430, Ann. Cas. 1918E, 622; In Re Lord's Estate, 134 Misc. 198, 236 N. Y. S. 136; In re Kink's County Trust So., 141 App. Div. 43, 125 N. Y. S. 713; Pell v. Mercer, 14 R. I. 412; Equitable Trust Co. v. Kent, 11 Del. Ch. 334, 101 A. 875; Blair v. Blair, 122 Me. 500, 120 A. 902; Cushing v. Burrell, 137 Mass. 21; Williamson v. Williamson, 6 Paige (N. Y.) 298; In re United States Trust Co. of New York, 241 N. Y. 184, 149 N. E. 827; Unruh's Estate, 18 Pa. Dist. R. 953. For an exhaustive annotation, the interested reader is referred to Old Colony Trust Co. v. Forsyth Dental Infirmary, 70 A. L. R. 636-654.

The testatrix directed the executors and trustees to set aside, for the use and benefit of Elizabeth B. Henderson, out of the residue as ascertained under clause 8 of the will, enough of the first-class securities which she owned at the time of her death, as will net an income of $100 per month. She further directed that these first-class securities be held by them, in trust, and the $100 per month arising from the income of such securities be paid to her monthly. In view of the language of the will, it was the duty of the executors and

trustees to set up this trust out of first-class securities on hand at her death, as soon after her death as it was ascertainable that they were not needed for the payment of the costs of administration and her debts and funeral expenses provided for by clause 1, and the specific pecuniary legacies directed to be paid by clauses 2, 3, and 4 of the will, and out of the income arising from such securities, pay her the $100 per month. If the income from the trust set up for her has drawn interest, or if it was used by the executors in their own business, during the period of administration, in either event, she should be paid interest thereon during the period of delay. It is a general rule that unless an executor uses the funds of the estate, the income or profit therefrom, during the period of delay incident to the administration of the estate, he is not chargeable with interest thereon. Webb v. Conn. Litt. Sel. Cas. (16 Ky.) 475; Clark's Adm'r v. Newman (Ky.) 1 S. W. 880, 8 Ky. Law Rep. 515; Farmers' Bank & Trust Co. v. Stanley, 190 Ky. 762, 228 S. W. 691.

The will directs and requires the executors and trustees to set up a trust out of first-class securities on hand at the death of the testatrix of the value of $75,000 for the use and benefit of Mrs. J. G. Wilhite for and during her natural life; the net income therefrom to be paid to her by them. It should be noted that this trust is not required to be set up out of the residue under clause 8, as was the trust directed to be set up by clause 3, for the benefit of Elizabeth B. Henderson. It was the duty of the executors and trustees to set up this trust out of such first-class securities on hand at the death of the testatrix as soon as it was ascertained that these securities were not needed or required to pay the debts, burial expenses, ad valorem taxes, and the costs of administration, and begin to pay to Mrs. Jane G. Wilhite the income arising therefrom after the death of the testatrix. If there was an unreasonable delay in setting up this trust, or in the payment of the net income therefrom to her, the rule as to the payment of interest thereon as we have stated it, respecting the right of Elizabeth B. Henderson, applies to Mrs. Wilhite.

It was the duty of the executors on taking control and possession of the estate of the testatrix to execute the will with reasonable diligence, to set up these trusts

out of first-class securities owned by the testatrix, and on hand at her death, with practical promptitude, and if they entertained a doubt as to the rights of the life tenants to receive monthly, quarterly, or semi-annually, as directed by the will, the net income arising directly from and out of these trusts during the statutory period of administration, it was also their duty to obtain without an unreasonable delay the advice of the chancellor as to the rights of the life tenants to the income therefrom, and the duties of the executors in respect thereto.

The set-up of the trust out of first-class securities for the use and benefit of Elizabeth B. Henderson, as required by the will, is expressly required to be sufficient to produce an income to net $100 per month, and if from any cause the income therefrom thereafter does not amount to $100 per month, it will be the duty of the executors and trustees to replenish the corpus thereof so as to produce a net income of $100 per month.

If the set-up of the $75,000 of first-class securities, required to be held in trust for Mrs. Wilhite for any cause should depreciate, or for any other cause become of less value than $75,000, the will does not require them to restore the value from the corpus.

The circuit court decreed that the income devised by clause 8 of the will of the testatrix to Jane Grainger Pennebaker was "a gift in trust for Jane Grainger Pennebaker for life with certain remainder interests over, after her death, * * *" and had "the effect of giving to her as a life beneficiary of such trust, and as a part of the income accruing to her as such, all of the income received after testatrix' death, from every source, during the administration of the estate by the executors, including the income from money and property subsequently used by them for the payment of debts, legacies and similar charges," and that "such income derived during administration of the estate shall not become a part of the corpus of the residuary trust."

This construction of the will diverts the $100 per month directed to be paid by the executors to Elizabeth B. Henderson as the income on the first-class securities required by clause 3 to be set up and held in trust for her life, and also diverts the income of the $75,000 of the first-class securities required by clause 4 to be set

up and held in trust for the life of Jane G. Wilhite, for the full period of one year, and appropriates them exclusively, for the use and benefit of Jane Grainger Pennebaker, the life beneficiary of the residuary estate, and thus in a sense defeats the will of the testatrix by the application of a mere arbitrary rule of construction. The will of the testatrix respecting the payment for life of the income on the residue to Jane Grainger Pennebaker is in these words:

> "The net income from said trust fund (the residuary estate under Clause 8), shall be paid to my grand-niece, Jane Grainger Pennebaker, for and during her natural life."

This language of the will confines the income of this life beneficiary of the residuary estate to the "net income." The term "net income" is the antithesis of "gross income," which the circuit court adjudged should be paid to Jane Grainger Pennebaker, instead of the "net income" and the term "net income" by the testatrix in the different clauses of her will plainly shows that she used these words with an advised understanding of their full meaning and import. No such construction should be given to them as will operate to deprive the life beneficiaries under clauses 3 and 4 of the will of the income which the testatrix thereby manifested her intention to provide for them within one year after the date of her death, and as will cause same by clause 8 to be turned over to the life beneficiary of the residuary estate.

Under the general rule as we have hereinbefore stated it, Jane Grainger Pennebaker is entitled for life to the income of the residuary estate from the death of the testatrix, but whether she is entitled to the "gross income" or the "net income" must be determined by the will. If the testatrix had merely directed by her will that she be paid the income from the residuary estate for life, the question whether she intended that she should be paid the "gross income" or the "net income" would be more difficult and perplexing. Old Colony Trust Co. v. Smith, 266 Mass. 500, 165 N. E. 657; McDonough v. Montague, 259 Mass. 612, 157 N. E. 159; Re Adrian, 87 N. J. Eq. 307, 101 A. 52; Clifford v. Davis, 22 Ill. App. 316; Williams v. Williams, supra. The testatrix having by the words of her will only

authorized and directed the payment of the "net income" of "the rest, residue and remainder" of her estate to Jane Grainger Pennebaker, no rule of construction need be resorted to, to arrive at her intention respecting this topic. It is only necessary to determine her intention connoted by her use of this term. It should be presumed that she intended to provide for this life beneficiary, and that her interest was uppermost in the mind of the testatrix when writing her will, more so than the welfare of the beneficiary of the residue. It is not to be presumed that she used the term in its strictest sense, unless the contrary may be discovered from the entire will. Again, the will in its entirety must be looked to, to ascertain the intention of the testatrix when she used he words "net income" in clause 8. After giving directions as to the payment of her debts and burial expenses, the payment of certain specific pecuniary legacies, and requiring the setting up the definite trusts of certain first-class securities (clause 8), she wrote:

"All the rest, residue and remainder of my estate, real, personal and mixed, and wherever situated, I give, devise and bequeath to the Liberty Bank & Trust Company and the Fidelity & Columbia Trust Company, both of Louisville, Ky., to be held by them in trust for my grand-niece, Jane Grainger Pennebaker, for and during her natural life. The *net income* from *said trust fund* shall be paid to my grand-niece, Jane Grainger Pennebaker, for and during her natural life * * *. *Said income* shall be paid to my grand-niece, Jane Grainger Pennebaker either quarterly or semi-annually as she may desire." But she "shall not be permitted or allowed to anicipate *said income* in any form, nor shall my said trustees recognize or accept or acknowledge any assignment or transfer by my said grand-niece of *said income* or any part thereof." (Our italics.) The words "net income" also appear in clauses 3 and 4 of her will.

The words "the rest, residue and remainder" indicate and define the estate to be held in trust by the executors for the life of Jane Grainger Pennebaker, and the term "net income" definitely and unequivocally fixes the character of income which she is to be paid for her life by the executors. The plain, simple words

of the will limit the income of Jane Grainger Penne-
baker to the "net income" on "the rest, residue and
remainder" of the estate. It is the duty of the execu-
tors to ascertain and determine the "rest, residue and
remainder" of the testatrix' estate, i. e. the funds on
hand after the payment of the debts, burial expenses,
cost of administration, including ad valorem taxes, the
specific pecuniary bequests directed to be paid by
clauses 2 and 3 and also the set-up of the trusts re-
quired by clauses 3 and 4 of the first-class securities on
hand at the death of the testatrix. When the "rest,
residue or remainder" is thus ascertained and de-
termined by them, Jane Grainger Pennebaker is entitled
·to and should be paid for and during her natural life
the "net income" arising therefrom from the date of
the death of the testatrix. The inheritance taxes
chargeable against the estate should be paid as herein
indicated.

The finding of the circuit court respecting the in-
heritance tax was that "Sec. 4281a-7, subsec. 5, Ky.
Stats., means that in case of the creation of a life estate
and the remainder in trust, the tax upon both interests
is to be paid out of the corpus of the trust fund." We
find no fault with his interpretation and application of
the statutes controlling the payment of the inheritance
tax. It is in harmony with the construction given to
like provisions of similar statutes of other states. Glos-
son & Otis on Inheritance Taxes, p. 253; Title Guaran-
tee & Trust Co. v. Lohrke (N. J. Ch.) 102 A. 660. The
expenses of administration, including ad valorem taxes,
the fees of the executors, trustees, and lawyers, were
properly decreed against the estate.

The facts are not sufficiently alleged in the petition
to enable us to determine the dates on which the set up
of the trusts for the use of Mrs. Wilhite and Mrs. Hen-
derson should have been made by the executors and
trustees, or to determine the date of the residuary
estate was ascertainable, as we have indicated.

On a return to the circuit court of this case, the
court may sua sponte, or on application of any party,
require the executors and trustees to amend their peti-
tion and set forth such facts as will show the data re-
quired to enable the court to determine the dates for
the setting up of the trusts and determining the amount

of the residuary estate as well as the date from which interest should be paid thereon to those entitled to it, as indicated in this opinion.

The meager allegations of the pleadings herein do not disclose whether the $10,000 income derived from the whole estate of the testatrix, during the first year of administration after it was received by the executors and trustees, or the subsequently received income, was placed on interest, or used by the executors. Since the judgment must be reversed on other grounds, the parties may present this question, if they desire, on a return of the case.

Wherefore the judgment is reversed for proceedings consistent with this opinion.

Whole court sitting.